464 P.2d 340

Virgil J. VANCE, dba Virgil Vance Farms, Appellant,

v.

R. HAMMER, dba Hammer Well Drilling Company, Appellee.

No. 9670.

Supreme Court of Arizona.

In Division.

Jan. 21, 1970.

Herbert Mallamo, Phoenix, for appellant.

Richmond, Ajamie & Fay, by William J. Richmond, Phoenix, for appellee.

LOCKWOOD, Chief Justice:

Appellant, Virgil Vance; dba Virgil Vance Farms, defendant below, appeals from a judgment in favor of plaintiff. The appellant is the owner of farming and ranching concerns near Queen Creek, Arizona. The appellee, R. Hammer, dba Hammer Well Drilling Co., plaintiff below, is a well driller. The facts are as follows:

Beginning in the spring of 1964, appellant employed appellee to dig and repair three wells on farms or ranches owned by appellant. Work on the first well, a ten-inch well, was completed satisfactorily and paid for in full. On about June 20, 1964, the parties entered into a written contract for the drilling of a twelve-inch well in a desert area. The well was to be drilled to a depth of 600 to 1,000 feet. The cost of the drilling was to be $5.50 per foot until rock was encountered and then on an hourly basis of $16.00 per hour. Appellant was to pay for all casing that went into the well. The contract warranted that the finished well was to be serviceably straight, round and aligned and of full size as to allow the installation and operation of a pump for that diameter well. Water was not guaranteed.

The appellee set up his drilling rig on the site selected for the well and began drilling. Rock was hit at a fairly shallow level and the drilling proceeded at the hourly rate. When the well was at about 550 feet, the driller who was operating the rig at the time (appellee admits that he was not personally at the well site at all times after the first 80 feet or so) allowed the hole to drift and it was necessary to backfill the hole before the drilling could be continued.

Sometime after the backfilling operation was completed, the driller "lost" his tools and it was necessary to "fish" for them before drilling could continue. This "fishing operation" took roughly two weeks. Under the contract there was to be no charge to appellant for either the backfilling or the fishing.

At about 730 feet drilling was discontinued. The well was then cased with twelve-inch casing to a depth of 614 feet and the balance of the hole was cased by

inserting a smaller ten-inch casing to a depth of about 722 feet. Hammer testified that although the well was not perfectly round and straight, it was "serviceably straight," and a pump with the proper screen could have been inserted to the bottom. Appellant's witness testified that they were unable to lower a pump to the bottom of the well.

After completing the drilling and casing of the twelve-inch well, Hammer moved his drilling rig to a smaller well at the ranch foreman's house. An oral agreement was made between Hammer and Vance whereby Hammer agreed to clean and deepen this well. This work was performed and the well was recased.

At this time a dispute arose between Hammer and Vance. Hammer had presented Vance with bills for the twelve-inch well totaling $9,711.00. Vance refused to pay the full amount, claiming that Hammer had charged for both the backfilling and "fishing" and that the well was not serviceably round and straight. By January, 1965, Vance had paid $7,740.00, or all but $1,971.00 of this bill. Hammer also presented Vance with a $1,582.00 bill for the work on the foreman's well.

Sometime in February, 1965, Hammer went to Vance's office to collect the full $3,553.00 he claimed Vance still owed him. An argument ensued between Vance and Hammer and after Hammer refused a $1,000.00 settlement offer, Vance told Hammer to settle the matter with the ranch manager, Robert Rodney.

Vance then left and Rodney and Hammer went into the ranch office. At this point Rodney's and Hammer's testimony is in conflict. Hammer testifed that Rodney offered him $1,500.00 but that he refused this amount. He says that Rodney then asked him what he would take, stating that the ranch did not have much money in the bank and that any payment that was made would have to be with a postdated check. Hammer testified that he told Rodney that he would have to have the full $1,582.00 for the foreman's well. He says Rodney agreed to this, but told him he would have to talk to Vance about a settlement on the twelve-inch well.

Rodney's testimony as to what occurred in the office differs. He says that after Vance left he offered Hammer $1,500.00 in *full payment* of *all* the bills then owing on the various wells, and that when Hammer refused this, he increased the offer to $1,582.00. He says that notwithstanding the fact that this was the very amount Hammer claimed was due on the foreman's well, the offer was made in settlement of *all* claims then due to Hammer.

Whichever version of what took place is true, it is uncontested that when Hammer left, Rodney gave him a postdated check for $1,582.00. As a memo on the face of the check, Rodney wrote, "Paid in full for well drilling." However, when Hammer got home, he added the words, "on ranch well at formans [sic] residence only." He then waited until the date the check was payable and cashed it.

Although Hammer made further demands on Vance for the $1,971.00 he considered still owing on the twelve-inch well, they were of no avail. Therefore, he proceeded with this action. The trial court, sitting without a jury, found for Hammer, awarding him $1,971.00 plus attorney's fees.

Appellant's defense at trial, and his contention here, is that Hammer's acceptance of the check bearing the notation "Paid in full for well drilling" was an accord and satisfaction of *all* the debts then owing from Vance and that acceptance of this check barred further recovery.

Accord and satisfaction has previously been defined by this Court as:

" * * * a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance." Green v. Huber, 66 Ariz. 116, 119, 184 P.2d 662, 664 (1947).

Generally, the elements essential for valid contracts must be present in a contract of accord and satisfaction. Tucson Utility Supplies, Inc. v. Fred J. Gallagher Const. Co., 102 Ariz. 499, 433 P.2d 629 (1967). Those elements are as follows: (1) A proper subject matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration. Green v. Huber, supra, 66 Ariz. at 119, 184 P.2d 662. Unless we can find as a matter of law that all of these elements are present, we must affirm the decision of the trial court.

Appellant contends that, as a matter of law, Hammer's acceptance of the check marked "Paid in full for well drilling" constitutes an accord and satisfaction of the entire $3,553.00. In support of this contention appellant cites the following cases which he urges hold that mere acceptance of a check marked "Paid in full" (or similar language) constitutes an accord and satisfaction: Employment Counsel v. Szarek, 350 Ill.App. 201, 112 N.E.2d 524 (1953); Hutchinson v. Culbertson, 161 Pa.Super. 519, 55 A.2d 567 (1947); Johnston v. Burnett, 17 Cal.App. 497, 120 P. 436 (1911). Upon analysis, however, these cases hold that where a payment of a particular amount is offered as payment in full, it can only be accepted according to the terms under which it is offered. The offeree cannot change the terms of the offer by disregarding or changing the language of the instrument of payment.

This is not the situation in this case. Here whatever offer occurred was made orally during the discussions between Rodney and Hammer in Rodney's office and the agreement made then constituted the accord. The writing on the check did not constitute the offer, but was merely a memo regarding what had occurred during the negotiations in Rodney's office culminating in the agreement or accord.

Where the negotiations surrounding an alleged accord and satisfaction are doubtful and permit of conflicting deductions they are to be resolved by the trier of fact. Lenchitsky v. H. J. Sandberg Co., 217 Or. 483, 343 P.2d 523 (1959); 6 Corbin on Contracts § 1277, at 117 (1962). Here, Rodney's and Hammer's testimony is in conflict as to the agreement reached in the office. If Rodney's version is used, an accord and satisfaction could be found. If Hammer's version prevails, the opposite result obtains.

In returning a verdict and judgment for Hammer, the trial judge, who was sitting as the trier of fact, resolved this dispute in favor of Hammer. We are bound by this result.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, J., concur.

NOTE: Justice JESSE A. UDALL having disqualified himself, Justice JACK D. H. HAYS has participated in the decision in this matter.