734 P.2d 101
**Marvin BAKER,**
**Plaintiff/Appellant/Cross-Appellee,**

v.

**David EMMERSON and Deborah Emmerson, husband and wife,**
**Defendants/Appellees/Cross-Appellants.**

**No. 2 CA–CIV 5644.**

Court of Appeals of Arizona,
Division 2, Department A.

Oct. 9, 1986.

Reconsideration Denied Nov. 18, 1986.

Review Denied March 3, 1987.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Michael J. Meehan and David A. McEvoy, Tucson, for plaintiff/appellant/cross-appellee.

Mesch, Clark & Rothschild, P.C. by J. Emery Barker, Tucson, for defendants/appellees/cross-appellants.

## OPINION

HOWARD, Presiding Judge.

Dr. Marvin Baker and Dr. David Emmerson, both radiologists, formed a professional corporation, Radiology, Nuclear Medicine and Ultrasound, Associates, P.C. (the "P.C.") and a partnership known as Radiology Leasing (the "Partnership"). Subsequently another doctor became a shareholder in the P.C. A dispute between Baker and the other two doctors led to Emmerson's agreement to buy out Baker's interest in the P.C. and Partnership for $45,000.[1]

Emmerson executed a promissory note dated June 17, 1981, in Baker's favor in the sum of $45,000, without interest, payable in monthly installments of $7,500 on the eighth day of each month, first payment due August 8, 1981. The note also provided, upon default, for acceleration of the entire debt at the option of the holder, with interest at the rate of 20 percent on the balance, and for the payment of attorney's fees by Emmerson if suit was brought to recover on the note. The parties also made other agreements and assignments which gave Emmerson ownership of all accounts

1. For tax purposes the parties allocated $43,000 to Baker's interest in the P.C. and $2,000 to his interest in the Partnership.

receivable not converted to cash prior to and including June 19, 1981, as offsets against all liabilities and expenses of the P.C. and the Partnership for which bills might have been sent after June 19, 1981. All expenses attributable to the operations of the Partnership and P.C. up to and through June 19, 1981, were to be paid, on a pro rata basis, from these accounts receivable. It was further agreed by the corporation that Baker would be reimbursed, pursuant to a previously executed employment agreement, for Baker's business and related expenses.

The P.C. had a deferred contribution Pension Plan and Trust Agreement (the "Plan") under which Emmerson was the sole trustee. The Plan required the P.C. to pay into the Plan trust account 10 percent of Baker's total compensation each fiscal year. The P.C. did not make the contribution for the fiscal year beginning July 1, 1980, and ending June 30, 1981, which would have been in the sum of $11,900.

Emmerson made the payments due on the note for the months of August and September 1981, but failed to make the October 1981 payment. Baker made demand on Emmerson to cure his default and resume payments, but Emmerson failed to do so. In November, however, Emmerson tendered to Baker a check in the amount of $2,000 in an attempt to satisfy the Partnership portion of the buy-out agreement. Baker refused to cash the $2,000 check sent by Emmerson because he was afraid that it might represent an attempt to extinguish the balance that was due and owing. In March 1982, Emmerson sent Baker a check in the amount of $18,770.86. The check was dated March 23, 1982, and was accompanied by an "accounting" wherein Emmerson sets forth how he arrived at the "net amount due" of $18,770.86. Accompanying this accounting and check was a letter to Baker's attorney. The letter stated:

> "Enclosed please find a check from Radiology, Nuclear Medicine and Ultrasound Associates, P.C. payable to Marvin Bcker, (sic) M.D., in the amount of $18,-770.86. Please see enclosed schedule.

I have talked to Dr. Baker several times by telephone to Edenton regarding this matter, most recently in late December or early January. He desired your legal opinion, and we had left it that he would have you contact me. As you know, I have tried to contact you by phone. As has my attorney. I understand that you have been very busy with an upcoming trial. Regardless, if you have any questions, please feel free to contact me. On alternate days I am in Tucson at 297-2566, and the other alternating days in Nogales at 1-287-2771 (ask for x-ray). *Kindly request that your client forward claimed expenses to me. I have requested this, but that has not been forthcoming.*

I would also request the return of my personal check in the amount of $2000.00, which Dr. Baker has refused to cash, which was for payment of the same amount for Radiology Leasing, the partnership. This has subsequently been replaced with a cashier's check in the amount of $2000.00, given to the escrow agent per the escrow instructions." (Emphasis added)

The check sent by Dr. Emmerson had no conditions on it, such as "payment in full" or any other such conditions. In fact, the letter and the accounting show that there was still more money that might be due. On March 24, 1982, Baker's attorney sent Dr. Emmerson a letter acknowledging the receipt of partial payment and demanding the remainder of the payment by March 29, 1982. Baker's attorney spoke with Dr. Baker by telephone and on April 15 sent the following letter to Dr. Emmerson:

> "This letter is in response to yours of March 23, 1982, and confirms the position described to you by me in our telephone conversation of April 2nd.
>
> We have forwarded to Marvin Baker your check in the amount of $18,770.86 as partial payment of the $45,000.00 promissory note. On Dr. Baker's behalf we hereby request payment of the remaining amount of principal, together with interest to and including 9 April 1982, in the total amount of $14,610.93, by April 9, 1982.

As I said on the telephone, in the event that you wish to tender that amount and receive credit for the $2,000 previously tendered directly or through the escrow, I am willing to make demand upon Mr. Nuckolls for the full $2,000 payment, before resorting to the personal check in the amount of $2,000 which you had previously sent.

In the meantime, Dr. Baker is gathering the matters of expenses referred to in your letter of March 23, 1982 and in my previous letter.

I have advised Dr. Baker that I think the entire promissory note is payable by you, notwithstanding the matters which you contend are credits, as scheduled in your letter of March 23rd.

We would very much like to receive payment on this without the need for the filing of suit, and therefore would ask that you promptly send forward payment or communicate immediately with me what you are in a position to do."

Dr. Baker cashed the $18,770.86 check. His attorney received no response to the letter sent to Dr. Emmerson in April and on July 19, 1982, filed this lawsuit.

The case was tried to the court, which concluded as a matter of law, that Dr. Baker's cashing of the $18,770.86 check constituted an accord and satisfaction. As will be seen, this conclusion was entirely incorrect. Other facts will be set forth as they are necessary to discuss the various questions for review.

 Generally, the elements essential for any valid contract must be present in a contract of accord and satisfaction. Those elements are as follows: (1) a proper subject matter, (2) competent parties, (3) an assent or meeting of the minds of the parties and (4) a consideration. *Vance v. Hammer*, 105 Ariz. 317, 464 P.2d 340 (1970). The general rule is that acceptance and use of a remittance by check which purports to be payment "in full," or which implies words of similar meaning, or is accompanied by a letter to that effect, constitutes an accord and satisfaction of the larger claim of the creditor, assuming the claim is unliquidated or disputed. *Mobilife*

*Corporation v. Delta Inv. Corp.*, 121 Ariz. 586, 592 P.2d 782 (App.1979). Thus, the great weight of authority in the United States is that if the debtor sends to a creditor, whose claim is unliquidated or in good faith disputed, a check stating on its face or in an accompanying letter that the check is sent in full satisfaction, then the creditor, if unwilling to accept it as such, must return it. If the creditor retains and uses the check, there has been an accord and satisfaction. 15 S. Williston, A Treatise on the Law of Contracts § 1854, at 542–46 (3rd ed. 1972). That is not the case here. The check had no notation on it stating that it was "in full" or any similar words. The letter which accompanied the check and contained the "accounting" set forth a balance due. There was no indication in the letter that acceptance of the check constituted satisfaction in full of the debt.

In the case of *Puett v. Walker*, 332 Mich. 117, 50 N.W.2d 740 (1952), the court was faced with a fact situation similar to that here. In *Puett*, the debtor sent an alleged "final accounting" and a check which was endorsed by the creditor and cashed. In holding that the cashing of the check did not constitute an accord and satisfaction, the court stated that the tender of payment as being in full should be in unequivocal terms so that the creditor in accepting the conditional payment would surely do so with full knowledge. The court quoted from an earlier Michigan case of *Durkin v. Everhot Heater Co.*, 266 Mich. 508, 254 N.W. 187 (1934):

"When the assent of the creditor is sought to be inferred from the acceptance of a less sum than that claimed to be due, the fact that such amount is offered in full discharge of the whole claim must have been communicated to the creditor in some unmistakable manner. Consequently, where a check is tendered, even though it accompanies an account, if there is no expression of the condition that it must be accepted in full payment, the acceptance of the check does not constitute an accord and satisfaction, as no agreement to that effect

can be implied from the transaction. So too, the mere payment by a debtor of an amount denominated 'a balance' upon an account rendered by him and its retention by the creditor does not constitute an accord and satisfaction." 266 Mich. at 513, 254 N.W. at 189.

Nowhere in Dr. Emmerson's letter or by notation on the check does he state or clearly indicate that Dr. Baker's right to negotiate the check was conditioned on its acceptance as a final settlement between the parties rather than in payment of what Emmerson was willing to admit he owed Baker. Thus the trial court erred in holding that there was an accord and satisfaction.

Baker also contends that the trial court erred in failing to give him judgment for two further sums. Each fiscal year, certain amounts were to be contributed by the P.C. to the Plan. The trustee of the Plan is Dr. Emmerson. Dr. Baker claims that the P.C. failed to contribute the sum of $11,900 to the Plan for the fiscal year ending June 30, 1981. He also claims the uncontested evidence shows he is entitled to his expenses pursuant to his employment agreement with the corporation. Both claims are corporate obligations and not obligations of the individual defendants.

■ At this point a history of the appeal of this case is appropriate. When Baker filed his notice of appeal, he appealed from "... the portion of the judgment in favor of the Defendants David Emmerson and Deborah Emmerson." Appellees, in their answering brief, contended that the liability, if any, for the Plan contribution and for Baker's expenses, was the liability of the P.C. and not theirs. Since the trial court's judgment failed to dispose of Baker's claims against the P.C., we suspended the appeal to permit Baker to comply with Rule 54(B), Rules of Civil Procedure, 16 A.R.S.

Baker then obtained an amended judgment, nunc pro tunc, in favor of the P.C. and the Emmersons and against Baker. However, he failed to file an amended notice of appeal, taken from the amended judgment. He contends that he did not need to file an amended notice of appeal in order to challenge the judgment against the P.C. because his original notice of appeal sufficed. We do not agree. The notice of appeal must designate, inter alia, the judgment or portion thereof from which the appeal is taken. Rule 8(c), Rules of Appellate Procedure, 17A A.R.S.

In *Hanen v. Willis,* 102 Ariz. 6, 423 P.2d 95 (1967), the court held that mere technical error in the notice of the appeal would not prevent an appellate court from deciding a case on its merits. In *Hanen,* the notice of appeal stated the wrong date of the judgment appealed from and misnamed one of the appellees. The supreme court concluded that these errors were technical and no one was misled by them.

Here, we have more than a technical error. Baker specified that he was appealing from that part of the judgment in favor of the individual defendants. It would appear from this specific designation that Baker thought that the P.C. was included in the judgment but that it chose to pursue the appeal only against the individuals. The appellees answered the opening brief with that understanding.

It has also been held that notice of appeal from the original judgment is sufficient to invoke the jurisdiction of the appellate court even though the judgment has been amended if the amendment does not substantially alter the original judgment. *Drummond v. Gerwe,* 264 So.2d 474 (Fla. App.1972). In this case, however, the amended judgment substantially alters the original judgment.

■ Although an appellate court construes the notice of appeal liberally in order to avoid denying review of issues that the parties clearly intend to appeal, it may not disregard the plain requirements of Rule 8(c) and read into the notice something that is not there. See *Averitt v. Southland Motor Inn of Oklahoma,* 720 F.2d 1178 (10th Cir.1983) (Where the notice of appeal clearly stated that the defendants appealed the judgment against them only insofar as that judgment related to punitive damages, defendants were precluded from seeking review of issues of compensatory

damages and liability.) No amended notice of appeal having been filed and the time for appeal having expired, we cannot consider Baker's claims against the P.C.

The Emmersons have cross-appealed, contending that the trial court erred in not awarding them their attorney's fees. In view of our disposition of this case, this contention is without merit.

■ Under the terms of the promissory note, Dr. Baker is entitled to his attorney's fees for prevailing in this appeal. They will be awarded upon his compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

The judgment in favor of the Emmersons is reversed and the matter is remanded for a new trial.

HATHAWAY, C.J., and FERNANDEZ, J., concur.