755 P.2d 1184

**Donald FLAGEL, Plaintiff-Appellant,**

v.

**SOUTHWEST CLINICAL PHYSIATRISTS, P.C., Defendant-Appellee.**

**No. 1 CA–CIV 9377.**

Court of Appeals of Arizona, Division 1, Department B.

March 31, 1988.

Reconsideration Denied May 18, 1988.

Machmer & Schlosser by Gerald A. Machmer, Phoenix, for plaintiff-appellant.

Beus, Gilbert, Wake & Morrill by Caroline Barron, Paula Bickett, Phoenix, for defendant-appellee.

## OPINION

EUBANK, Judge.

Our primary consideration is whether the trial court erred in granting summary judgment based on its conclusion that the payment by defendant-appellee, Southwest Clinical Physiatrists, P.C. ("Southwest"), by check, with "Paid in Full" noted on its face, to plaintiff-appellant, Donald Flagel ("Flagel"), of the undisputed part of Flagel's disputed claim constituted an accord and satisfaction of Flagel's whole claim. First, however, we consider whether the trial court erred in denying Flagel a change of judge based on waiver. Finally, we consider whether the trial court erred in striking Flagel's amended motion for partial summary judgment based on the lack of citations to the record in his statement of facts.

## FACTS

Flagel agreed to work as a physical therapist for Southwest as an independent contractor. Under his contractor agreement, Flagel would receive $26,000 as base pay for services rendered from April 21, 1983 to April 20, 1984. Under the addendum to the agreement, Flagel would receive a percentage of the revenue collected from Southwest Rehabilitation Services as incentive pay within one month of the contract termination date. The independent contractor agreement also provided that Flagel would indemnify Southwest for all costs including attorneys' fees incurred by Southwest in enforcing the agreement. The agreement was renewed for the next year, but a different addendum was attached. It provided that Flagel would receive one-third of the revenue collected from Southwest Rehabilitation Services in excess of $100,000 as incentive pay, but the addendum did not address when Flagel would receive the incentive pay. The addendum provided:

> Yearly incentive shall be based on the following formula:
>
> Mr. Flagel shall receive additional salary for the 1984–1985 contract year, payable as mutually agreed upon, the amount which shall be equal to 33⅓% of the amount of revenue collected from Physical Therapy Services, (Southwest Rehabilitation Services) over and above the initial $100,000 collected from such services. This formula shall be revised yearly, or more often as necessary, based on Southwest Clinical Physiatrists expense profiles.

In March 1985, Flagel and Southwest met, and Southwest decided not to renew the agreement. Flagel was upset that Southwest was not going to pay its accounts receivable:

> A. ... [Flagel] I asked them about the accounts receivable at that time. They said if it isn't in by the end of my contract, I would not receive any reimbursement for it.
>
> Q. What do you mean if it doesn't end by the end of your contract, you wouldn't receive any reimbursement for it?
>
> A. According to the doctors, if the money wasn't collected by April 20, then I had no rights to it according to them even though I did the work on them.

On April 8, 1985, Southwest wrote Flagel, stating that "[t]he final payment due you will be paid at the end of your contract, April 20, 1985, based on the collections of the first three weeks of April, 1985." Flagel testified that he understood by the term "final payment" that the doctors at South-

west "were wiping out their obligation" to Flagel:

Q. Was your understanding of Adrianna [who wrote the April 8, 1985 letter on behalf of Southwest], the that [sic] author's use of the word "final payment" to be that they were sending you the final payment due you under the contract?

A. [Flagel] She might have thought that. I didn't.

Q. I'm just asking what you interpreted her understanding to be. I realize that that is not your interpretation. I'm just asking you for your interpretation of what she was saying here.

A. That's what it says.

Q. You thought, then, that according to the doctors, that by sending you this check, that they were wiping out their obligation to you; is that correct? The final check, the final payment due you referred to in Exhibit 8.

A. That's what they are referring to in that paragraph, yes.

Q. And you knew that that's what they were—that was their understanding?

A. Yes.

In its letter of April 26, 1985 to Flagel, Southwest enclosed "a check for full payment of your 1984–85 Independent Contract with Southwest Clinical Physiatrists." Southwest explained in the letter that the amount of the check was based on "all payments received through April 20, 1985." On the enclosed check for $2,803.00, Southwest noted, "1984–1985 Independent Contract—Paid in Full." Flagel testified that he understood that by this notation on the check, Southwest was submitting the check in total satisfaction of its obligations to Flagel:

Q. That was my question. So it was your understanding that the doctors and Southwest Clinical Physiatrists were submitting to you [a] check marked as Ex-

hibit 10 as final payment, total satisfaction of all of their obligations to you?

A. Yes, that's what they say.

Flagel blacked out the notation on the check and cashed the check:

Q. I see something, a black square on Exhibit 10. Did you make that black square?

A. Yes. It had written paid in full or paid in full or something, something on that amount and I wasn't going to sign a check and agree that I was paid in full which is the reason of the proceedings that we're going through right now.

Q. Did you understand that they had sent you Exhibit [10] as your payment in full?

A. That's what they think, yes.

Q. But that isn't what you think?

A. Correct.[1]

In June 1985, Flagel filed a complaint for breach of contract seeking $37,810.71 from Southwest. This amount of damages claimed was one-third of the amount in the accounts receivable on April 15, 1985, minus the amount collected at the expiration of the agreement. ($122,119.65 − $8,687.53) ÷ 3 = $37,810.71.

On October 28, 1985, Flagel filed a motion for partial summary judgment. He argued that the addenda to the agreement were unambiguous and that Southwest was obligated to pay him a percentage of the amounts remaining in the accounts receivable on April 20, 1984 and on April 20, 1985. In response, Southwest moved to strike Flagel's motion for partial summary judgment, based on Flagel's failure to set forth any statement of facts in support of his motion, contrary to Rule 3.2(g)(1), Local Rules of Practice for the Superior Court of Maricopa County. On November 13, 1985, Flagel filed an amended motion for partial summary judgment, setting forth the following statement of facts:

The parties hereto, entered into a written contract called "Independent Contractor Agreement" and "Employment

---

1. We note that Exhibit 10, the cancelled check, was apparently attached to Southwest's statement of facts in support of its motion for summary judgment. Although the cancelled check does not appear as indicated in the record, Flagel does not dispute that he did negotiate the check.

Contract Addendum" on April 21, 1983, and an Employment Contract Addendum II on April 21, 1984, copies of which are attached to the Court's copy of this motion and are on file in the Clerk's office attached to the Complaint as Exhibit A.

On or about April 20, 1985, the Employment agreement was terminated by the Defendants. Plaintiff has made demand upon the Defendants to pay him his share of his salary collected by Defendants after April 20, 1985, but Defendants have refused to pay.

On November 19, 1985, in its reply in support of its motion to dismiss, Southwest objected to Flagel's amended motion for partial summary judgment. Southwest argued that his statement of facts did not contain facts stated in numbered paragraphs with references to specific portions of the record, contrary to Rule IV(f), Arizona Uniform Rules of Practice of the Superior Court. On the same day, Southwest filed its own motion for summary judgment, arguing that its payment and Flagel's negotiation of its check constituted an accord and satisfaction.

On December 4, 1985, the trial judge set Southwest's motion to strike Flagel's motion for summary judgment and Southwest's motion for summary judgment for oral arugment on December 13, 1985. On December 13, both counsel conferred with the trial judge. No court reporter was present. According to the minute entry, there was legal discussion at that conference:

> Legal discussion is held between Court and counsel.
>
> IT IS ORDERED setting Plaintiff's Motion to Compel; Plaintiff's Motion for Summary Judgment; Defendant's Motion to Strike for oral argument on January 20, 1986 at 10:00 a.m.

On December 18, 1986 Flagel filed a notice of change of judge. On January 16, 1986, the trial court denied Flagel's notice of change of judge, "as untimely and waived by participation in the Pretrial Conference." On January 27, 1986, the trial court ordered that Southwest need not respond to Flagel's motions for partial summary

judgment and granted Southwest's motion to strike Flagel's motions for partial summary judgment. On April 7, 1986, the parties had oral argument on Southwest's motion for summary judgment, and on April 23, 1986, the trial court granted Southwest's motion for summary judgment. On June 4, 1986, the trial court awarded Southwest its attorneys' fees.

On appeal, Flagel argues that the trial court erred in denying him a change of judge, in granting summary judgment on the issue of accord and satisfaction, and in striking his amended motion for partial summary judgment.

### NOTICE OF CHANGE OF JUDGE

■ Flagel argues that the trial court erred in finding that he waived his right to a change of judge and in denying him a change of judge.

Rule 42(f)(1)(D)(i), (ii), Arizona Rules of Civil Procedure provides that a party waives his right to a change of judge as a matter of right when the party participates in any judicial proceeding which concerns "the merits of the action" and involves consideration of evidence, or participates in a pretrial conference. This means that the right to a change of judge is lost as soon as the parties have reason to know how the assigned judge feels about any aspect of the merits of the action. *King v. Superior Court,* 108 Ariz. 492, 494, 502 P.2d 529, 531 (1972). "The merits of an action" is a phrase not readily definable, but may "be regarded as referring to significant legal rights as distinguished from technicalities relating to only procedure or form." *Dudley v. Superior Court,* 123 Ariz. 80, 81–82, 597 P.2d 983, 984–85 (1979) (*quoting Northwest Airlines, Inc. v. North Dakota Bd. of Equalization,* 244 N.W.2d 708, 710 (N.D.1976)). *Cf. Guarrascio v. Fisher,* 154 Ariz. 186, 741 P.2d 319 (App.1987).

Five days before Flagel filed his notice of change of judge, counsel conferred with the assigned trial judge and, according to the judge, "legal discussion" was held. Thereafter, the trial judge denied Flagel's notice of change of judge "as untimely and waived by participation in the Pretrial Con-

ference." Without a transcript of the conference, we cannot determine whether the conference concerned the merits of the action. Since the record does not dispute the trial judge's conclusion, we must presume that the judge was correct. *Visco v. Universal Refuse Removal Co.*, 11 Ariz.App. 73, 462 P.2d 90 (1969). Thus, we find no error.

## ACCORD AND SATISFACTION

Our next and primary consideration is whether the trial court erred in concluding that Southwest's payment and Flagel's negotiation of the $2,803.00 check was an accord and satisfaction of Flagel's claim under their agreement.

■ There are four elements to an accord and satisfaction: (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds of the parties; and (4) consideration. *Vance v. Hammer*, 105 Ariz. 317, 320, 464 P.2d 340, 343 (1970); *Baker v. Emmerson*, 153 Ariz. 4, 7, 734 P.2d 101, 104 (App.1986).

Flagel's main argument is that there was no consideration for the accord. His argument is based on the rule that when a claim is undisputed and liquidated, payment and acceptance of a lesser amount does not operate as an accord and satisfaction because the debtor is already obligated to pay the whole claim. *Phillips v. County of Graham*, 17 Ariz. 208, 213–214, 149 P. 755, 757 (1915). As explained by the *Restatement* reporters, the reason for this rule is that an unscrupulous obligor may exert unfair pressure to change a contract, based on the possibility that legal remedies for breach of contract might not put the obligee in as good a position as voluntary

performance. *Restatement (Second) of Contracts*, § 73, comment c at 181 (1981).

Southwest's response is based on the rule that when a claim is disputed or unliquidated, payment and acceptance of a lesser amount operates as an accord and satisfaction because the settlement is in the nature of a compromise. *Phillips*, 17 Ariz. at 213, 149 P. at 757.[2] *Cf. Mobilife Corp. v. Delta Investment Corp.*, 121 Ariz. 586, 592 P.2d 782 (App.1979). As explained by Professor Corbin, the reason for this rule is to encourage alternatives to litigation:

> The sound reason for holding that payment or other performance is a sufficient consideration is that compromises of disputed claims ought to be and in fact are favored and supported by the courts. Reduction of litigation by mutual agreement of litigants is much to the public interest; and in order to attain this desired end, it is necessary to sustain the compromise agreement without regard to whether the claim was correct or incorrect.

1A *Corbin on Contracts*, § 187 at 165 (1963). *Baker v. Emmerson*, 153 Ariz. 4, 7, 734 P.2d 101, 104 (App.1986).

Application of these two rules to Flagel's claim is unclear because his claim to revenues has two parts: an undisputed part and a disputed part.[3] Southwest did not dispute Flagel's claim to revenues received before his termination. However, it did dispute Flagel's claim to revenues received thereafter. The parties cite no Arizona authority directly addressing this question of whether payment and acceptance of the undisputed part of a claim can operate as an accord and satisfaction of the disputed part of a claim.[4]

---

**2.** Professor Corbin warns that the payment of the undisputed part of an otherwise disputed claim "can scarcely be described as a compromise; it is rather a total victory by the debtor and a total surrender by the creditor...." 1A *Corbin on Contracts*, § 187 at 166–67 (1963).

**3.** We do not address whether Flagel's claim was unliquidated at the time of his termination, because Southwest did not argue that it was. Flagel asserts that his claim was liquidated, based apparently on his assumption that every ac-

count reflected in the accounts receivable at the time of his termination would eventually be collected in full.

**4.** We note the Arizona Supreme Court's decision in *Fairfield v. W.J. Corbett Hardware Co.*, 25 Ariz. 199, 205, 215 P. 510, 512 (1923). The court stated in dictum that an accord was apparently invalid because "that portion of the claim paid was not disputed, and its payment could be no consideration for remitting the portion unpaid...."

Not infrequently, a claim is disputed, but the debtor concedes that part of the claim is due. 1 S. Williston, *A Treatise on the Law of Contracts,* § 129 at 528 (3d ed. 1957). Under the majority position, the payment of the undisputed part supports a promise to discharge the whole claim. 6 *Corbin on Contracts, supra,* § 1289 at 165; 1 S. Williston, *supra,* § 129 at 528. The commentators and courts adopt a variety of explanations for supporting the majority position. As explained by Professor Williston, the law looks upon the whole claim as disputed and applies the rule that the adequacy of the consideration will not be questioned:

> While it would appear that in paying this conceded part of the claim, the debtor was merely doing what he was previously bound to do, the law looks upon an unliquidated or disputed claim as a whole and does not attempt to set a value upon it, or to define the extent of the debtor's legal obligation. Accordingly, such a claim is dealt with as a chattel is dealt with, as something the adequacy of which as consideration will not be measured.

1 S. Williston, *supra,* § 129 at 528 (footnotes deleted). As explained by Professor Corbin, the obligor's performance executes the accord and consideration is not required for an executed contract:

> The strict application of the doctrine of consideration in the field of discharge of contract has given much dissatisfaction, as appears from the opinions of the judges themselves. Performance of legal duty should, perhaps, be regarded as insufficient to support a promise to render some return performance, although even this may be regarded as doubtful. But by his acceptance of the rendition of such a performance of legal duty as full satisfaction of a larger claim, the creditor is not merely making a promise to render some return performance. Instead, he is assenting to a discharge of the debtor. Instead of undertaking a new duty to the other party, he is extinguishing his own previous right against that party. The parties themselves do not regard the transaction as an exec-

utory contract but as a finished and executed transaction; and there is no good reason why the courts should not also so regard it. It is not ordinarily supposed that consideration is required for that which is executed. It is true that it is sometimes said that the creditor is making an implied "promise" never to sue for the balance of his claim; but even if this has any foundation in fact, there is no reason for overlooking his express assent to the immediate extinction and discharge of the claim. After such a discharge, a subsequent suit by him should be fruitless.

6 *Corbin on Contracts, supra,* § 1289 at 165–66; *see Air Van Lines, Inc. v. Buster,* 673 P.2d 774, 778 (Alaska 1983). Professor Corbin's explanation is supported by the *Restatement (Second) of Contracts,* § 281(1), which provides that "[p]erformance of the accord discharges the original duty." The reporters comment that the obligor's "performance discharges both his original duty and his duty under the accord." *Restatement (Second) of Contracts,* § 281(1), comment b at 382. Professor Corbin also explains that courts should adopt the majority position on grounds of social policy:

> If a part of the claim is in dispute, there is something to be settled and litigation to be avoided. A settlement, mutually agreed on, should be supported, whether we call it a compromise or not.

1A *Corbin on Contracts, supra,* § 188, at 171. As explained by the Supreme Court of Oregon, it adopted the majority position in order to avoid trapping unsophisticated obligors:

> It would be too technical a use of the doctrine of consideration to release a well-counseled debtor who tenders a nominal amount beyond his admitted debt but to trap one less sophisticated who is induced to pay the undisputed amount in return for his creditor's illusory promise to forgive the rest.

*Kilander v. Blickle Co.,* 280 Or. 425, 571 P.2d 503, 505 (1977); *see County Fire Door Corp. v. C.F. Wooding Co.,* 202 Conn. 277, 520 A.2d 1028, 1031 n. 3 (1987).

■ We adopt the majority position and hold that Southwest's payment of the undisputed part of Flagel's claim, under the facts here, constituted sufficient consideration to support an accord and satisfaction.

Flagel argues that the undisputed and disputed parts of his claim are separable. Professor Corbin distinguishes the payment of the undisputed part of an otherwise disputed claim from the payment of one of two wholly independent claims, arising out of separate transactions. 1A *Corbin on Contracts, supra,* § 188 at 171; *see Mobilife Corp. v. Delta Inv. Corp.,* 121 Ariz. at 589, 592 P.2d at 785 (meeting of the minds analysis: "where there are several accounts or claims existing between the parties, acceptance of a check marked with words such as 'full payment' or 'account in full' will not result in an accord and satisfaction unless it is clear which claims or accounts are intended to be covered by the remittance"); *cf.* 1 S. Williston, *supra,* § 129 at 530 (the case of a wholly unliquidated claim which the debtor has admitted to be of a certain value should be distinguished from the case of a liquidated claim with an unliquidated or disputed addition to it). *Restatement* reporters also suggest that the existence of economic coercion be a factor in considering whether there is a single claim or separate claims:

> Whether in a particular case there is a single unliquidated claim or a combination of separate claims, some liquidated and some not, depends on the circumstances and the agreements of the parties. If there are no circumstances of unfair pressure or economic coercion and a disputed item is closely related to an undisputed item, the two are treated as making up a single unliquidated claim; and payment of the amount admittedly due can be consideration for a promise to surrender the entire claim.

*Restatement (Second) of Contracts,* § 74, comment c at 186–87 (1981).

Flagel's claims to revenues received before and after his termination are not wholly independent claims arising out of separate transactions. In addition, Flagel presented no evidence that he was economically coerced into negotiating Southwest's check.

Flagel apparently argues that he was not competent to enter an accord and satisfaction:

> That the Defendants have intentionally compromised a $37,810.00 claim which was to be Plaintiff's bonus for hard work performed during the 1984/1985 contract year by simply being more knowledgeable than the plaintiff and settling plaintiff's future liquidated claim by paying the past liquidated claim and the delivery of cover letters stating that all of plaintiff's claim is "paid in full" or that the payment consists of "final payment".

We have examined Flagel's statement of facts in support of his opposition to Southwest's motion for summary judgment. In his statement of facts, Flagel failed to establish any genuine issue of material fact concerning competence of the parties.

Flagel argues that there could have been no meeting of the minds because the accord was a bad deal: "It is inconceivable that the Plaintiff, being entitled to $37,000.00 could ever enter into a 'meeting of the minds' with the Defendant when it was Plaintiff's position that the Defendant owed the $37,000.00." Flagel also bases his argument on his testimony that he did not think the term "final payment" on Southwest's check meant final payment under the agreement.

■ During its March 1985 meeting, in its April 1985 letters, and on the face of its $2,803.00 check, Southwest clearly expressed its intent that the check was paid as a settlement in full. It may be that Flagel did not assent and there was no actual meeting of the minds. However, the making of a contract in this circumstance does not require such an actual meeting of the minds. *T.B.M. Properties v. Arcon Corp.,* 346 N.W.2d 202 (Minn.App.1984); *Anderson v. Shelby Mutual Insurance Co.,* 237 Ga. 687, 229 S.E.2d 462 (1976). 6 *Corbin on Contracts, supra,* § 1279 at 130; Annotation, *Modern Status of Rule that Acceptance of Check Purporting to be Final Settlement of Disputed Amount Constitutes Accord and Satisfaction,* 42

A.L.R. 4th 12, § 8(a) at 56 (1985) (a collection of cases holding that the creditor cannot alter the check by deleting the conditional language, such as "Payment in Full"). As a matter of law, an accord and satisfaction occurred when Flagel cashed the check. *Laganas v. Installation Specialists, Inc.*, 291 A.2d 187 (D.C.1972); *Graffam v. Geronda*, 304 A.2d 76 (Me. 1973); *Wilcox Press, Inc. v. Beauty Fashion, Inc.*, 73 A.D.2d 988, 423 N.Y.S.2d 565 (1980); *Gallagher Lumber v. Shapiro*, 137 Vt. 139, 400 A.2d 984 (1979).

Flagel argues that he could have raised a question of fact concerning Southwest's motion for summary judgment if Southwest had promptly complied with Flagel's request for production of documents. On October 28, 1985, Flagel sought to compel production of Southwest's accounts, upon which his incentive pay was calculated. For reasons not clear from the record, the court delayed in hearing Flagel's motion until April 7, 1986, when it heard Southwest's motion for summary judgment. The trial court granted Flagel's motion at the same time it granted Southwest's motion for summary judgment.

We conclude Flagel fails to show prejudice resulting from the delay in Southwest's production of documents. In his statement of facts in support of his response to Southwest's motion for summary judgment, Flagel stated that the revenues collected for the month of April, 1985, were $8,687.53. Southwest's $2,803.00 check was based on this amount. Flagel did not suggest to the trial court and does not now argue that the revenues collected were, in fact, greater.

### FLAGEL'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Flagel's final issue is that the trial court erred in striking his amended motion for partial summary judgment. In his motion, Flagel contended that Southwest was obligated to pay him all revenues received after his termination. He reasons that if Southwest were obligated to pay all those revenues, then all of his claim would have been liquidated and Southwest's partial payment would not have constituted an accord and satisfaction.

We disagree with Flagel's reasoning. A disputed claim, as well as an unliquidated claim, is subject to an accord and satisfaction. Even if Flagel's claim were liquidated, Flagel never argued that Southwest's dispute over his claim was not made in good faith. Furthermore, Flagel fails to show prejudice. He did present this liquidated claim argument in his response to Southwest's motion for summary judgment. Nevertheless, during the three-month period after the trial court struck Flagel's motion and before oral argument on Southwest's motion, Flagel could have also filed his motion for partial summary judgment with an amended statement of facts, in compliance with Rules 3.2(g)(1), Local Rules of Practice for the Superior Court Maricopa County, and Rule IV(f), Uniform Rules of Practice of the Superior Court. He did not.

### CONCLUSION

We affirm the trial court's summary judgment. In addition, we grant Southwest's motion for attorneys' fees in an amount to be determined pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure.

BROOKS, P.J., and KLEINSCHMIDT, J., concur.