**Robert HATH, Plaintiff,**

v.

**ALLEGHANY COLOR CORP., a foreign corporation; INX International Ink Co., a foreign corporation; and ABF Freight System, Inc., a foreign corporation, Defendants.**

**No. CIV. 03–1475–PHX–EHC.**

United States District Court,
D. Arizona.

Feb. 23, 2005.

Michael Peter Fiflis, Phoenix, AZ, for Plaintiff.

Jon D. Schneider, Esq., Cody Maryl Hall, Esq., Michael E. Hensley, Esq., Jeffrey R. Simmons, Esq., Phoenix, AZ, for Defendants.

## ORDER

CARROLL, District Judge.

Before the Court is a Motion for Summary Judgment by Defendant ABF Freight System [1] (ABF or Defendant) [Dk. 53]. Plaintiff responded [Dk. 62]. Defendant replied [Dk. 67].

Defendant, a common carrier, entered into a contract with Plaintiff to transport Plaintiff's household goods from Michigan

---

1. ABF Freight System appears to be the only Defendant still participating in this case. The Court dismissed Defendant Alleghany Color Corporation [Dk. 64] pursuant to the parties' stipulation. INX International Ink Company made an offer of judgment pursuant to Rule 68 [Dk. 47] which Plaintiff timely accepted [Dk. 51]. However, neither Plaintiff nor Defendant INX International Ink Company has made the required filings of Rule 68 with the Court in order to obtain entry of judgment.

to Arizona. In the same trailer with Plaintiff's goods was a shipment of ink, which allegedly stained or otherwise damaged Plaintiff's goods. Plaintiff alleges claims for negligence, res ipsa loquitur, and the Carmack Amendment. 49 U.S.C. § 14706.

### Background

Defendant ABF is a general freight carrier which includes household goods as part of its "U–Pack Moving" Program. Under the U–Pack arrangement, ABF delivers a standard general freight trailer to the customer, who is responsible for packing the household goods into the trailer. ABF transports the goods to the desired location, where the customer is responsible for unloading them.

Plaintiff made arrangements with ABF for the shipping of his goods through the U–Pack Moving Program. On July 20, 2001, Defendant delivered an empty trailer to Plaintiff's residence in Michigan and provided Plaintiff with a Bill of Lading [Dk. 54, Exh. 3 ("Plaintiff's Deposition") at 16]. The Bill of Lading contains, *inter alia,* the estimated weight of Plaintiff's goods: 4,480 pounds. It also contains a pricing summary, which includes "Standard Liability Coverage" of $0.10 per pound at no additional price. On the front page, paragraph 4 reads:

2. Following is the relevant excerpt from Plaintiff's deposition:
    Q. Was there anything in [the Bill of Lading] that you saw that you were not in agreement with?
    
    .    .    .    .    .
    
    A. The thing that I found that I questioned was the 10–cents–per–pound coverage, liability coverage.
    
    .    .    .    .    .
    
    Q. Did you call anybody at ABF U–Pack and talk to them once you saw it?
    A. Yes, I did.
    
    .    .    .    .    .
    
    Q. And what was the substance of the conversation?

LIMITED CARGO LIABILITY: In exchange for ABF's lower rates, Customer agrees that ABF's liability is limited to the following amounts. Customer can arrange for more coverage at a higher price by contacting ABF. Customer agrees that ABF's liability is limited to the liability coverage shown in the Pricing Summary above [$0.10 per pound], for damage caused by ABF's negligence.

Paragraph 13, on the back page, reads:

APPLICABLE LAW: Customer acknowledges that ABF is a general commodity carrier and that this shipment will be subject only to the laws and regulations governing commodity carriage.

Plaintiff read the Bill of Lading. Plaintiff's Deposition at 16. He noticed the limitation of liability and objected to it. *Id.* at 18. He called ABF and expressed his concerns with a representative. *Id.* He was informed that additional insurance was available. *Id.*[2] Plaintiff did not purchase additional insurance. He signed the Bill of Lading on July 20, 2001.

ABF's tariff contains the same liability limitation as the Bill of Lading [Dk. 54 ¶ 5].

Used Household Goods including Personal Effects ... when accepted and

A. I felt it was a very small amount of money for coverage of personal belongings.
Q. What was the response from whoever you talked to at ABF?
A. They said that was just their standard amount that's stated in the contract.
Q. Did they discuss at all the possibility of having a higher coverage?
A. They did mention that there was other insurance available.
Q. And what was your response to that?
A. I said no.
Plaintiff's Deposition at 17–18.

transported by ABF will be subject to a maximum liability of $0.10 per pound per package unless the shipper has requested excess liability coverage...

### Summary Judgment Standard

Summary judgment is required under Rule 56 if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element of their case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; see also Rule 56(e).

### Carmack Amendment

■ Under the Carmack Amendment, a carrier is liable to a shipper for "actual loss or injury to property." 49 U.S.C. § 14706(a). However, the carrier may limit its liability to a value agreed upon by the shipper and carrier. 49 U.S.C. § 14706(c)(1)(A). On the request of the shipper, the carrier must provide the shipper with a "copy of the rate, classification, rules and practices upon which any rate applicable to a shipment ... is based." 49 U.S.C. § 14706(c)(1)(B). The Carmack Amendment preempts all state law causes of action arising from interstate transportation of goods. *Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 613 (9th Cir.1992).

■ In the Ninth Circuit, for a carrier to effectively limit its liability, it must satisfy the four-part test set forth in *Hughes.* First, the carrier must "maintain a tariff in compliance with the requirements of the Interstate Commerce Commission." Id. at 611–612 (citations omitted). Second, the carrier must "give the shipper a reasonable opportunity to choose between two or more levels of liability." *Id.* This means that "the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." *Id.* at 612 (citations and internal quotation marks omitted). Third, the carrier must "obtain the shipper's agreement as to his choice of carrier liability limit." *Id.* Finally, the carrier must "issue a bill of lading prior to moving the shipment that reflects any such agreement." *Id.* "The carrier has the burden of proving that it has complied with these requirements." *Id.* (citations omitted).

The bill of lading must also contain an "inadvertence clause" in order to effectively limit liability. *Hughes* at 612 n. 3 (citing *Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079, 1082 (5th Cir. 1992)). The inadvertence clause must specify the release rate and state that such a rate will apply unless the shipper declares otherwise. *Id.* "This gives the shipper the required opportunity to choose between levels of carrier liability." *Atwood v. U W Freight Line, Inc.,* 127 F.Supp.2d 1155, 1159 (D.Id.1999).

■ Defendant meets all four prongs of the Hughes test. First, it is not contested that Defendant made its tariff available upon request. *See* 49 U.S.C. §§ 13710(a), 14706(c)(1)(B). Second, Plaintiff had "reasonable opportunity to choose between two or more levels of liability" *Hughes* at 611–612. He read the Bill of Lading, saw the limitation of liability provision, which operates as an inadvertence clause, contacted the company about different levels of liability coverage for his goods, and chose not to purchase additional liability coverage. Fourth, Hath signed the Bill of Lading,

which limited Defendant's liability to $0.10 per pound.

Plaintiff, in his Response, cites cases which are not on point. In *Bio–Lab, Inc. v. Pony Express Courier Corporation*, the Eleventh Circuit held that a carrier had failed to effectively limit its liability because of inconsistent limitation provisions in the bill of lading. 911 F.2d 1580 (11th Cir.1990). In *Carmana Designs Ltd. v. North American Van Lines Inc.*, the Third Circuit held that a carrier failed to effectively limit its liability to $1.25 per pound where the actual weight of the shipper's cargo was substantially less than the estimate on the bill of lading. 943 F.2d 316 (3rd Cir.1991). In *Caspe v. Aaacon Auto Transport, Inc.*, the Eighth Circuit held that an automobile transport company's liability limitation on personal property was invalid where the limitation clause was buried in the middle an agreement written entirely in densely packed, bold-face type. 658 F.2d 613 (8th Cir.1981). Finally, in *Chandler v. Aero Mayflower Transit Company*, the Fourth Circuit found that the carrier's agent misled the shipper, telling him that he was signing inventory sheets when he was in fact signing the bill of lading. 374 F.2d 129 (4th Cir.1967). None of these cases involves a shipper who, as here, read the liability limitation, contacted the company for information about limitation and other insurance rates, and then elected not to pay for additional liability coverage.

Defendant need not comply, as Plaintiff contends, with 49 C.F.R. Part 375, entitled "Transportation of Household Goods in Interstate Commerce, Consumer Protection Regulations." The Federal Motor Carrier Safety Administration, relying on Interstate Commerce Commission precedent declining to apply household goods regulatory requirements to general freight carriers transporting crated household goods, has determined that Defendant is not required to comply with household goods regulations for its U–Pack Moving Service. *See* Surface Transportation Board Decision, STB Docket No 42055, July 12, 2001 [Dk. 53, Exh. A].[3] Plaintiff's reliance on 49 C.F.R. § 1035.1 and § 1035, App. A is also misplaced, since those regulations only concern transportation by rail or water

Finally, Plaintiff alleges that Defendant did not properly advise Plaintiff of his arbitration rights concerning his damage claim under 49 U.S.C. § 14708.[4] However, Plaintiff offers no legal authority that such an omission could invalidate an otherwise effective liability limitation.

### Satisfaction and Accord

"An 'accord' is an agreement whereby one of the parties undertakes to give or perform and the other to accept in satisfaction of the claim, liquidated or in dispute, something other than or different from what he is or considers himself entitled to, and a satisfaction is the execution of such an agreement." *Moreno v. Rus-*

---

3. The Surface Transportation Board, whose predecessor was the Interstate Commerce Commission, had jurisdiction to make such a determination. *See Gray Lines Tour, Co. of Southern Nevada v. I.C.C.*, 824 F.2d 811, 815 (9th Cir.1987); *Middlewest Motor Freight Bureau v. I.C.C.*, 867 F.2d 458, 459 (8th Cir. 1989); *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5 F.3d 911, 916 (5th Cir.1993).

4. That section reads, at (b)(2): "Notice of arbitration procedure.—The carrier must pro-

vide the shipper an adequate notice of the availability of neutral arbitration, including a concise easy-to-read, accurate summary of the arbitration procedure, any applicable costs, and disclosure of the legal effects of election to utilize arbitration. Such notice must be given to persons for whom household goods are to be transported by the carrier before such goods are tendered to the carrier for transportation."

*sell,* 47 Ariz. 38, 53 P.2d 411, 413 (1936). "Generally, the elements essential for valid contracts must be present in a contract of accord and satisfaction... Those elements are as follows: (1) A proper subject matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration." *Vance v. Hammer,* 105 Ariz. 317, 464 P.2d 340, 343 (1970) (internal citation omitted). "Where the negotiations surrounding an alleged accord and satisfaction are doubtful and permit of conflicting deductions they are to be resolved by the trier of fact." *Id.*

When Plaintiff received his shipment, he discovered that his goods had been damaged by a shipment of ink loaded in the same trailer. On August 13, 2001, Plaintiff submitted a "Standard Form for Presentation of Loss and Damage Claim" to Defendant for cleaning costs of $1,077.65, to be increased if certain articles ultimately needed to be replaced, cleaning labor of $160 per day starting August 3, 2001 "until claim is settled", and a full refund of the $1,970 in transportation costs [Dk. 54, Exh. 7]. On August 22, 2001, Defendant made a counteroffer of $3,618 [Dk. 54, Exh. 8]. Plaintiff sent another letter on September 5, 2001, outlining three possible options: contacting the local media, instituting legal action, or "settl[ing] this claim in a friendly, swift and fair manner" [Dk. 54, Exh. 7]. On October 30, 2001, Defendant reiterated its previous offer of $3,618. *Id.* Plaintiff, after consulting with a lawyer, accepted the offer on January 22, 2002 per Defendant's instructions by signing the letter of August 22, 2001 and stating "Acceptance of offer $3,618.00." Plaintiff then cashed the check. Any issue concerning settlement of the claim is not addressed in this Order.

### Conclusion

Because the Carmack Amendment preempts state law claims, summary judgment will be granted as to Counts I and II (Negligence) and Count III (Res ipsa loquitur) of the Amended Complaint [Dk. 1]. As to Count IV, Defendant effectively limited its liability under the Carmack Amendment.

Accordingly,

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** Defendant ABF Freight System's Motion for Summary Judgment [Dk. 53] to the extent contained in this Order.

**IT IS FURTHER ORDERED DENYING** as moot Plaintiff's "Motion for Leave to Take Telephonic Depositions" [Dk. 45].

**IT IS FURTHER ORDERED DENYING** as moot Plaintiff's "Motion to Vacate Judgment Entered Against Defendant INX International Ink Co." [Dk. 57].

**IT IS FURTHER ORDERED** setting a status hearing on Monday, March 7, 2005 at 9:00 a.m.