341 P.3d 478

Jackie ABBOTT; Robert Bergansky; Raymond Brown; Nicholas Bigler; Richard Campuzano; Dalton Gormey; Tracy James; Stephanie Krueger; Zainab Mohamed; Robert Pierson; Lucas Smith; Robert Van Steenburgh; Amber Winters; Christina Yerkey; and Steven Young, Plaintiffs/Appellants,

v.

BANNER HEALTH NETWORK fna Banner Health, Inc., an Arizona corporation; Dignity Health fka Catholic Healthcare West, a California corporation; Scottsdale Healthcare Corp., an Arizona corporation; Northwest Hospital LLC, a Delaware corporation; Northern Arizona Healthcare Corp., an Arizona corporation; John C. Lincoln Health Network, an Arizona corporation; University Medical Center Corp., an Arizona corporation; Carondelet Health Network, an Arizona corporation; Tucson Medical Center, an Arizona corporation; Oro Valley Hospital, LLC, a Delaware corporation, Defendants/Appellees.

No. 1 CA–CV 13–0259.

Court of Appeals of Arizona, Division 1.

Dec. 23, 2014.

Knapp & Roberts, P.C., By David L. Abney, Scottsdale, Levenbaum Trachtenberg, PLC, By Geoffrey M. Trachtenberg, The Entrekin Law Firm, By B. Lance Entrekin, Phoenix, Co–Counsel for Plaintiffs/Appellants.

Gammage & Burnham, P.L.C., By Cameron C. Artigue and Christopher L. Hering, Phoenix, Counsel for Defendant/Appellee.

Presiding Judge DONN KESSLER delivered the decision of the Court, in which Judge PATRICIA K. NORRIS and Judge MAURICE PORTLEY joined.

## OPINION

KESSLER, Presiding Judge.

¶ 1 This appeal addresses whether hospitals who accept payment from the Arizona Health Care Cost Containment System ("AHCCCS") for services rendered to AHCCCS patients ("Patients") can later seek to impose and enforce liens on funds the Patients have obtained from third-party tortfeasors related to the Hospital services provided. In this case, the Hospitals claim and the superior court held that by entering into accord and satisfaction agreements, the Patients cannot now seek to declare the liens unenforceable. We hold the accord and satisfaction agreements are void because, as the Patients argue, federal law preempts Arizona law to the extent state law allows the liens. Since the liens themselves are void under federal law, the accord and satisfaction agreements are also unenforceable. Accordingly, we reverse the judgment and remand this matter to the superior court for further proceedings consistent with this decision.[1]

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The Hospitals accepted payments from AHCCCS for treating the Patients. Pursuant to Arizona Revised Statutes ("A.R.S.") sections 33–931 (2014) and 36–2903.01 (Supp. 2013), the Hospitals then recorded liens for the difference in the amount billed for services and the amount paid by AHCCCS. The Patients obtained personal injury settlements from third parties that related to the medical care provided. To access their settlement funds, the Patients, with the assistance of counsel, agreed with the Hospitals to have the persons holding the settlement funds pay the Hospitals reduced amounts in return for the Hospitals releasing their liens. These Patients as well as other patients who had not settled hospital liens brought this putative class action against the Hospitals on a number of theories, including a request for declaratory relief, that federal law preempted the liens.[2] The Patients also argued that federal law prohibited any accord and satisfaction of such liens. Each claim was premised on the theory that the liens were invalid under federal law.[3] The Patients requested in part that the Hospitals be ordered to refund to the Patients the amounts paid to the Hospitals to release the liens. As an exhibit to their complaint the Patients attached "Provider Participation Agreements" between the Hospitals and AHCCCS in which the Hospitals agreed to comply with federal law: "The Provider shall comply with all federal, State and local laws, regulations, standards, and executive orders governing performance of duties under this Agreement...." Many of those agreements also specifically stated that "[t]he Provider agrees to abide by Arizona Administrative Code R9–22–702 prohibiting the Provider from charg-

---

1. The Hospitals did not seek to dismiss the claims brought by John James and the order granting the Hospitals' motion to dismiss did not list any names. Apparently, his name was incorrectly listed in the caption on appeal. Accordingly, we amend the caption and order the use of this caption for all further proceedings on appeal.

2. The other claims were for breach of contract, unjust enrichment, tortious interference, negligence, slander of title, abuse of process, and fraud.

3. In essence, the Patients were claiming that the liens amounted to balance billing in violation of federal Medicaid law. " '[B]alance billing' oc-

curs when a provider ... charges or collects ... an amount in excess of the amount that is reimbursable under the applicable health insurance plan. In practice, this occurs when a provider ... accepts partial payment from ... [an] insurance plan, then bills the patient or other entity for the difference between that reimbursement and the provider's usual, customary, or standard charge." David J. Marchitelli, Annotation, *Propriety and Use of Balance Billing in Health Care Context*, 69 A.L.R. 6th 317 n. 1 (2011); *see also* Lisa Thompson, 3 Ariz. Legal Forms, Debtor–Creditor § 6.61 note (2d ed.) (West 2013) (stating balance billing occurs when a provider asserts the patient owes more than the provider's customary charge to the insurance company).

ing, collecting, or attempting to collect payment from an AHCCCS eligible person."

¶ 3 The Hospitals moved to dismiss the complaint based on accord and satisfaction. The Hospitals argued that the Patients obtained the lien releases after the Hospitals agreed to and accepted lower amounts in satisfaction of the liens and the accord and satisfaction agreements were enforceable regardless of the merits of any underlying claim or dispute over the liens. In negotiating the releases with attorneys for the Patients, the Hospitals documented with some of the Patients that: "The payment will constitute an accord and satisfaction, compromise and release of any claim as to the validity of the hospital's claim or the manner of its assertion." The Patients do not argue that the language of any of the agreements reserved any rights to challenge the legality of the liens.

¶ 4 The Patients opposed the motion, arguing that any such agreement was void because the liens, and thus, any accord and satisfaction agreements premised on the liens, are prohibited by federal law. The Patients argued that because the Hospitals accepted payments in full from AHCCCS, both placing a lien on an AHCCCS patient's personal injury recovery and any accord and satisfaction of such liens are unenforceable.[4]

¶ 5 The superior court granted the Hospitals' motion and dismissed the Patients' claims. The court cited A.R.S. §§ 33–931 and 36–2903.01, authorizing the liens, and framed the issue as whether the Patients failed to state a claim because they settled the liens in question. The court determined "it [was] irrelevant whether federal law preempts Arizona law and prohibits hospitals from enforcing statutory liens on AHCCCS accounts.... [because] [a]ccord and satisfaction does not turn on whether Plaintiffs would have prevailed on the merits of the dispute that was settled." Accordingly, the

court concluded the lien accord and satisfaction agreements were "final and binding regardless of the validity of the underlying claims."

¶ 6 The court then entered a judgment pursuant to Arizona Rule of Civil Procedure 54(b) from which the Patients timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (Supp.2013).[5]

## DISCUSSION

¶ 7 "We review de novo a trial court's grant of a motion to dismiss for failure to state a claim." *Canyon Ambulatory Surgery Ctr. v. SCF Ariz.*, 225 Ariz. 414, 417, ¶ 7, 239 P.3d 733, 736 (App.2010). In doing so, "[w]e assume the allegations in the complaint are true, and will 'uphold dismissal only if the plaintiff [ ] would not be entitled to relief under any facts susceptible of proof in the statement of the claim.'" *Id.* (alteration in original) (citation omitted). In such review, we assume as true only the well-pleaded facts. *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4, 121 P.3d 1256, 1259 (App.2005).

¶ 8 The Patients argue the accord and satisfaction agreements with the Hospitals cannot be enforced because two elements of a valid accord and satisfaction are missing-proper subject matter and consideration. Both assertions are based on federal law governing Medicaid prohibiting these types of liens and any accord and satisfaction agreements based on such liens. The Patients contend that since these agreements were based on balance billing and liens prohibited by federal law governing Medicaid or violated public policy, there was not a proper subject matter for an enforceable accord and satisfaction. They also contend that because the Hospitals could not seek payments in excess of the amounts they received through AHCCCS, any consideration for the accord and satisfaction agreements was illusory.

4. The Patients did not contend they entered into the accord and satisfaction agreements under duress or otherwise assert any *factual* basis as to why those agreements were unconscionable.

5. While this appeal was pending, the superior court heard summary judgment on the claims of other patients who had not entered into accord and satisfaction agreements with the Hospitals

on the liens. The court determined that the state statutes permitting liens by an AHCCCS provider on third party claims brought by AHCCCS patients are preempted by and violated federal Medicaid law, an issue it did not reach as to the Patients who entered into the accord and satisfaction agreements.

¶ 9 The Hospitals argue the only issue before us is whether the accord and satisfaction agreements are valid and not whether the liens were enforceable. More specifically, the Hospitals contend the accord and satisfaction agreements: (1) cannot be successfully attacked based on alleged "illegality" of the liens under federal law; (2) were supported by adequate consideration because the parties "exchange[d] promises to forbear from disputing a claim any further"; and (3) cannot be challenged on the basis of illegality after entry into the agreements and the release of the liens.

¶ 10 We agree with the Patients. Their challenges to the liens and attempts to obtain relief from the accord and satisfaction agreements are not barred because the liens and the accord and satisfaction agreements based thereon are prohibited under federal law, which preempts Arizona statutes authorizing such liens.

## I. Medicaid/AHCCCS, third-party liability, and hospital liens

¶ 11 "Arizona administers AHCCCS, the state's Medicaid program, pursuant to Title XIX of the Social Security Act, 42 U.S.C. sections 1396 to 1396v (1988 & Supp. V 1993)." *Mercy Healthcare Ariz., Inc. v. AHCCCS,* 181 Ariz. 95, 97, 887 P.2d 625, 627 (App.1994). Health care providers that treat Medicaid/AHCCCS patients receive reimbursement as determined by statute. *See* A.R.S. § 36–436 (2009) (filing and review of rates and rules as prerequisite to operation); A.R.S. § 36–436.02(A) (2009) (increases of rates or charges; filing); 42 U.S.C. § 1396a(a)(30)(A) (West 2014) (establishing payment rates is federally mandated); *La-Bombard v. Samaritan Health Sys.,* 195 Ariz. 543, 545, ¶ 4, 991 P.2d 246, 248 (App. 1998) ("AHCCCS pays care providers a percentage of billed charges, based on a statuto-

ry formula."). The reimbursement rates are generally much less than the billed charges. *Id. See generally Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust,* 410 F.3d 304, 313–14 (6th Cir. 2005) (discussing the federal requirement for state plans to establish payment rates).

¶ 12 "Payment received by a hospital from [AHCCCS] ... is considered payment ... of [AHCCCS's] liability for the hospital bill." A.R.S. § 36–2903.01(G)(4); *see also* Arizona Administrative Code R9–22–702(B) ("Registered providers must accept payment from the Administration or a contractor as payment in full."). However, A.R.S § 36–2903.01(G)(4) expressly permits hospitals accepting payments from AHCCCS to "collect any unpaid portion of its bill from other third-party payors or in situations covered by title 33, chapter 7, article 3." Title 33, chapter 7, article 3, and specifically A.R.S. § 33–931, is the general medical lien statute and subsection (A) gives hospitals an "entitle[ment] to a lien for the care and treatment or transportation of an injured person" that

> extends to all claims of liability or indemnity, except health insurance and underinsured and uninsured motorist coverage ... for damages accruing to the person to whom the services are rendered, or to that person's legal representative, on account of the injuries that gave rise to the claims and that required the services.

A hospital's lien entitlement is for its "customary charges." A.R.S. § 33–931(C).[6]

¶ 13 In contrast, federal law provides Medicaid providers must accept the payment from Medicaid as payment in full. Federal law mandates that a service provider "may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service." 42 U.S.C. § 1396a(a)(25)(C). In addition, 42 C.F.R.

---

**6.** AHCCCS itself is entitled to liens for hospital or medical care "for which the administration or a contractor is responsible." A.R.S. § 36–2915(A) (2009). Federal law requires that States attempt "to seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors." *Wos v. E.M.A. ex rel. Johnson,* —— U.S. ——, 133 S.Ct. 1391, 1396, 185 L.Ed.2d 471 (2013). As part of

this requirement "States must require beneficiaries 'to assign the State any rights ... to payment for medical care from any third party.'" *Id.* (citing 42 U.S.C. § 1396k(a)(1)(A) (West 2014)). Under Arizona law, AHCCCS liens take priority over hospital liens. A.R.S. § 36–2915(F).

Here, the parties do not argue that the accord and satisfaction agreements affect any rights AHCCCS might have in the recoveries.

§ 447.15 (2012), entitled "Acceptance of State payment as payment in full," requires that a state "must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." Federal courts have uniformly interpreted this federal statute and regulation as precluding a provider from balance-billing a patient for the difference between what the provider normally charges for services and what the provider is paid through Medicaid. *See Spectrum Health,* 410 F.3d at 317–18 (discussing cases); *see also Miller v. Gorski Wladyslaw Estate,* 547 F.3d 273, 282 (5th Cir.2008) ("Case law uniformly indicates that the limitations on provider reimbursement are triggered ... when a provider elects to bill and accepts payment from Medicaid for the services it provides to the patient.").[7] This interpretation also applies to liens placed on funds provided from third parties to settle claims by the Medicaid patients arising out of the injury leading to the healthcare services paid for by Medicaid. *Spectrum Health,* 410 F.3d at 314–15, 317 (citing cases); *see also West v. Shelby Cnty. Healthcare Corp.,* No. W2012–00044–COA–R3–CV, 2013 WL 500777, at *23 (Tenn.Ct. App. Feb. 11, 2013) (holding hospitals cannot seek to enforce liens once they have accepted Medicaid payments), *affirmed in part, reversed in part on other grounds* No. W2012–00044–SC–R11–CV, —— S.W.3d ——, 2014 WL 7242746 (Tenn. Dec. 19, 2014). At least two states have also held that such liens are preempted by Medicaid statutes even when a state statute or regulation permits provider liens on third-party recoveries. *See Olszewski v. Scripps Health,* 30 Cal.4th 798, 135 Cal.Rptr.2d 1, 69 P.3d 927, 938, 941–45 (2003) (holding that state statutes which permitted Medicaid providers to place liens and recover on claims against third parties who caused the Medicaid covered injuries were preempted to the extent the statutes permitted recovery beyond the Medicaid payment); *Public Health Trust of Dade Cnty., Fla. v. Dade*

*Cnty. Sch. Bd.,* 693 So.2d 562, 565–66 (Fla. Dist.Ct.App.1996) (holding claim by Medicaid provider that tortfeasor and attorneys for Medicaid beneficiary interfered with provider lien under Florida law was properly dismissed because Florida lien statutes were preempted by federal Medicaid provisions barring such liens).

## II.   Accord and satisfaction

¶ 14 "In Arizona, a lien 'is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation.' " *Andrews v. Samaritan Health Sys.,* 201 Ariz. 379, 382, ¶ 10, 36 P.3d 57, 60 (App.2001) (citation omitted) *disapproved on other grounds by Blankenbaker v. Jonovich,* 205 Ariz. 383, 387 n. 7, ¶ 18, 71 P.3d 910, 914 n. 7 (2003). A holder of a valid lien, "is not a 'creditor' ... because it has only a contingent interest in litigation. In other words, [the hospital] cannot attempt to collect directly from [the patient], although it does hold a valid lien" on any funds if the patient litigates or settles. *LaBombard,* 195 Ariz. at 551, ¶ 31, 991 P.2d at 254.

¶ 15 "The doctrine of accord and satisfaction discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement, the accord being the agreement, and the satisfaction its execution or performance." *Best Choice Fund, LLC v. Low & Childers, P.C.,* 228 Ariz. 502, 510, ¶ 24, 269 P.3d 678, 686 (App.2011) (internal quotation marks and citation omitted); *see also* Restatement (Second) of Contracts § 281 (1981) (hereinafter "Restatement") ("An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty."); 13 *Corbin on Contracts* § 69.1 at 273 (2003) (" '[E]xecutory accord,' means an agreement for the future discharge of an existing claim by a substituted perform-

---

7. In *Miller,* the court held that the hospital could seek to collect on its lien from a third-party tortfeasor because the patient had become Medicaid-eligible after the hospital began to provide state-mandated services and the hospital never billed or collected any funds from Medicaid. 547 F.3d at 284–85. We do not address that issue because here the Hospitals billed and accepted payments from AHCCCS as payment in full for their services.

ance. An executory accord is a compromise."). As our supreme court stated in *Owens v. Hunter,* an accord and satisfaction constitutes a substituted performance on an existing claim "which will bar an action on the original claim." 91 Ariz. 7, 10, 368 P.2d 753, 755 (1962) "Acceptance of the substitute performance discharges the previously existing claim. A debtor's pleading and proving of the 'accord and satisfaction' is a complete defense to an action by the creditor on the previously existing claim." 13 *Corbin on Contracts* § 70.1 at 301.

¶ 16 "Generally, the elements essential for any valid contract must be present in a contract of accord and satisfaction. Those elements are as follows: (1) a proper subject matter, (2) competent parties, (3) an assent or meeting of the minds of the parties and (4) a consideration." *Baker v. Emmerson,* 153 Ariz. 4, 7, 734 P.2d 101, 104 (App.1986) (citing *Vance v. Hammer,* 105 Ariz. 317, 320, 464 P.2d 340, 343 (1970)); *see* 13 *Corbin on Contracts* § 69.3 at 285 ("As in the formation of any other agreement, an offer of an accord creates the power of acceptance.... Once accepted, the offer becomes an accord."). Here, the Patients challenge only the proper subject matter of and consideration for the accord and satisfaction agreements.

**A. Proper Subject Matter**

¶ 17 The Patients maintain that because the Hospitals' liens were prohibited by federal law or violative of public policy, the accord and satisfaction agreements were unenforceable for lack of a proper subject matter. They argue we must evaluate the legality of the conduct that the underlying agreements contemplate and that because federal preemption was not addressed in either *LaBombard,* 195 Ariz. 543, 991 P.2d 246, or *Andrews,* 201 Ariz. 379, 36 P.3d 57, we should look to *Lizer v. Eagle Air Med Corp.,* 308 F.Supp.2d 1006, 1009 (D.Ariz. 2004), which concluded that 42 C.F.R. § 447.15 preempts any attempt under Arizona law to assert a lien against a Medicaid patient's personal injury recovery after billing Medicaid. The Hospitals argue that an accord and satisfaction resolves an entire controversy and even if the underlying

agreement or lien may be prohibited, the resulting accord and satisfaction is still enforceable.

¶ 18 We agree with the Patients that because the liens are prohibited by federal Medicaid law and such law preempts Arizona statutes authorizing the liens, both the liens and any accord and satisfaction agreements premised on the liens are prohibited and unenforceable. Accordingly, the accord and satisfaction agreements lack a proper subject matter.

¶ 19 Generally, an agreement is unenforceable under state law for public policy reasons if the legislature has determined that such agreements are "illegal," e.g., prohibited. *See 1800 Ocotillo, LLC v. WLB Grp., Inc.,* 219 Ariz. 200, 202, ¶ 7, 196 P.3d 222, 224 (2008) ("Contract provisions are unenforceable if they violate legislation or other identifiable public policy."); *White v. Mattox,* 127 Ariz. 181, 184, 619 P.2d 9, 12 (1980) ("Recovery will be denied if the acts to be performed are themselves illegal or contrary to public policy."); *Landi v. Arkules,* 172 Ariz. 126, 133, 835 P.2d 458, 465 (App.1992) ("An agreement is unenforceable if the acts to be performed would be illegal or violate public policy."); *Mountain States Bolt, Nut & Screw Co. v. Best–Way Transp.,* 116 Ariz. 123, 124, 568 P.2d 430, 432 (App.1977) ("[I]f the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action, then recovery should be denied."); *see also* Restatement § 178 cmt. a ("Occasionally, on grounds of public policy, legislation provides that specified kinds of promises or other terms are unenforceable.... Assuming that [such legislation is valid], the court is bound to carry out the legislative mandate with respect to the enforceability of the term."). As a matter of judicial restraint, courts determine if an agreement is unenforceable under state law for public policy reasons only if the legislature has not spoken. *See 1800 Ocotillo,* 219 Ariz. at 202, ¶ 8, 196 P.3d at 224 ("Accordingly, absent legislation specifying that a contractual term is unenforceable, courts should rely on public policy to displace the private ordering of

relationships only when the term is contrary to an otherwise identifiable public policy that clearly outweighs any interests in the term's enforcement."); Restatement § 179 cmt. b ("The declaration of public policy has now become largely the province of legislators rather than judges. This is in part because legislators are supported by facilities for factual investigations and can be more responsive to the general public"). Only when the legislature has not spoken will courts apply a balancing test to determine whether such an agreement is unenforceable. *See 1800 Ocotillo,* 219 Ariz. at 202, ¶ 7, 196 P.3d at 224 ("In determining whether a provision is unenforceable, courts balance the interest in enforcing the provision against the public policy interest that opposes enforcement."); Restatement § 178 (setting forth factors to be balanced).

¶ 20 If the underlying agreement is prohibited and unenforceable, an accord and satisfaction based on that agreement is also unenforceable. *See Precision Fabricators, Inc. v. Levant,* 182 Cal.App.2d 637, 643–44, 6 Cal.Rptr. 395 (Cal.Dist.Ct.App.1960) (holding that if the underlying contract is illegal, the accord and satisfaction cannot be enforced or the parties could be able to enforce an illegal contract indirectly through the accord and satisfaction); *Shortell v. Evans–Ferguson Corp.,* 98 Cal.App. 650, 277 P. 519, 524 (1929) (holding that if an underlying agreement is void, the accord and satisfaction cannot be enforced); 1 C.J.S. *Accord and Satisfaction* § 15 at 480 (1985) ("The subject matter of an accord and satisfaction must be lawful, and an accord and satisfaction cannot be founded upon an illegal or unlawful claim or agreement, or one in contravention of public policy." (footnote omitted)); 1 Am.Jur.2d *Accord and Satisfaction* § 6 at 473 (1994) ("All claims ... irrespective of their subject matter, may be the subject of an accord and satisfaction, provided such contracts are not tainted with illegality."); William F. Elliott, 3 *Commentaries on the Law of Contracts* §§ 2070–71 at 261–62 (1913) (stating "the accord and satisfaction may be founded on an untenable claim, if it be not illegal," and "[a]n illegal claim can not be the consideration of an accord and satisfaction"); William Wait, 6 *A Treatise Upon Some of the General Prin-*

*ciples of the Law,* Chap. II, art. I, § 1 at 408 (1885) ("It is likewise essential to the validity of an accord and satisfaction, that the thing agreed to be done be legal, for if the thing to be done, or the consideration, is illegal, the accord will be void.").

¶ 21 In this case, we have two legislatures speaking. The Arizona Legislature expressly permitted these types of liens pursuant to A.R.S. § 36–2903.01(G)(4) and A.R.S. § 33–931(A). Congress, however, expressly prohibits these types of liens. *See* 42 C.F.R. § 447.15; 42 U.S.C. § 1396a(a)(25)(C). As discussed above, courts around the nation uniformly hold that Medicaid-provider liens on claims brought by Medicaid beneficiaries against third-party tortfeasors for the injuries which Medicaid provided coverage, as well as against any settlement or judgments on those claims, are the equivalent of liens against the patients themselves. *Supra* ¶ 13. Moreover, at least two states have held such liens are prohibited even if state statutes permitted the liens and one state has held that actions based on settlements of the liens seeking to enforce or protect the liens cannot succeed as a matter of law. *Olszewski,* 135 Cal.Rptr.2d 1, 69 P.3d at 938, 941–45 (holding that state statutes which permitted Medicaid providers to place liens and recover on claims against third parties who caused the Medicaid covered injuries were preempted to the extent the statutes permitted recovery beyond the Medicaid payment); *Pub. Health Trust of Dade Cnty., Fla.,* 693 So.2d at 565–66 (holding that claim by Medicaid provider that tortfeasor and attorneys for Medicaid beneficiary interfered with provider lien under Florida law was properly dismissed because Florida lien statutes were preempted by federal Medicaid provisions barring such liens). Thus, if preemption applies in this context, both the liens and accord and satisfaction agreements on the liens are prohibited and unenforceable.

¶ 22 We have examined the Arizona State Plan approved by federal authorities for Arizona to run AHCCCS. We find nothing in the Plan which authorizes hospitals that agree to accept AHCCCS payments for medical services to place and enforce liens against the AHCCCS beneficiaries' recover-

ies from third-party tortfeasors for the injuries that led to the medical treatments paid for through AHCCCS. The Arizona State Plan for Medicaid expressly provides that AHCCCS "limits participation to providers who meet the requirements of 42 C.F.R. [§ ] 447.15." State Plan for Medicaid § 4.19(f) at 62, AHCCCS Website, http://www.azahcccs.g Ov/Reporting/Downloads/MedicaidStatePlan/ EntireStatePlan.pdf (last visited December 22, 2014). Although Attachment 4.19-A(I)(F)to the State Plan provides that prospective rates to be paid to hospitals by AHCCCS "represent payment in full for covered services excluding . . . third party payments," State Plan for Medicaid § 4.19(f) Attachment at 3, AHCCCS Website, http:// www.azahcccs.gOv/Reporting/Downloads/ MedicaidStatePlan/EntireStatePlan.pdf, that section is merely one sentence in an attachment discussing detailed methods to establish rates for inpatient care and in no way trumps the requirements of 42 U.S.C. § 1396a(a)(25)(C) and 42 C.F.R. § 447.15. See id. at § 4.19(a) at 57. If the State Plan had meant to create an exemption from federal law to permit hospital liens on third-party recoveries, the State Plan would have expressly done so as it did by giving the

AHCCCS Administration such a right. See id. at § 4.17(a) at 53. Nor does it explain why the Hospitals would be required to sign Provider Agreements with AHCCCS which expressly provide the Hospitals would abide by federal law and by an AHCCCS regulation prohibiting the Hospitals from charging, collecting, or attempting to collect payment from an AHCCCS eligible person. Supra ¶ 2.

¶ 23 Nor is enforcing liens for further payments from third-party recoveries obtained by AHCCCS patients somehow distinguishable from enforcing the liens against the patients themselves. No Arizona case provides that enforcement of such liens is permissible under state law,[8] and even if it were, it would be preempted by federal law governing Medicaid reimbursement applicable through AHCCCS. Supra ¶ 13; see also West v. Shelby Cnty. Healthcare Corp., No. W2012–00044–COA–R3–CV, 2013 WL 500777, at *16 (Tenn.Ct.App. Feb. 11, 2013) (holding that liens against third parties for payment of hospital services is an effort to collect from the patient), affirmed in part reversed in part on other grounds No.

---

**8.** In LaBombard, a hospital provided services to an injured person and was paid by AHCCCS. 195 Ariz. at 545, ¶ 4, 991 P.2d at 248. The hospital filed a lien and the patient was able to collect a settlement from the insurer of the tortfeasor. Id. at ¶¶ 5–7. The patient and the hospital disputed the enforceability of the lien, for reasons other than federal preemption. Id. at 546, ¶ 8, 991 P.2d at 249. We held the lien was enforceable but never addressed whether the lien was against the patient or the tortfeasor or violated federal preemption. Id. at 544–45, ¶ 1, 991 P.2d at 247–48. Andrews did not involve services paid by AHCCCS but rather paid pursuant to a private contract between hospitals and the patients' insurers. 201 Ariz. at 381, ¶¶ 2–3, 36 P.3d at 59. Those contracts provided that anything paid by the insurers was payment in full, but another provision reserved the right of the provider to recapture from a third party the difference between its customary charges and what the insurer had paid the hospital. Id. at ¶ 3. The question presented was whether the recapture liens enforced against any tortfeasor recovery and from the tortfeasors' insurers were permitted. Id. at 381–82, ¶¶ 6–7, 36 P.3d at 59–60. We reasoned that the reservations showed the right to be reimbursed for customary charges and that the liens were enforceable against any settlements even though there was no personal re-

course by the providers against the patients. Id. at 383, ¶ 14, 36 P.3d at 61. While the court analogized to hospitals being able to enforce liens on settlements for AHCCCS payments, it did not cite to the AHCCCS statute or regulation involved and did not address preemption. Id. at 383–84, ¶ 17, 36 P.3d at 61–62.

Nor do two later Arizona decisions dealing with healthcare provider liens assist the Hospitals here. In those cases, the courts barred enforcement of a medical care provider lien against a tortfeasor's insurer that had settled the tort claim and against the patient who had settled the claim because the statute limited enforcement to "the person, firm, or corporation liable for damages" to the patient. Blankenbaker, 205 Ariz. at 387, ¶ 17, 71 P.3d at 914 (unenforceable against patient); see also Maricopa Cnty. v. Barfield, 206 Ariz. 109, 112, ¶ 12, 75 P.3d 714, 717 (App.2003) (unenforceable against insurer). The Legislature amended A.R.S. § 33–934(A) in 2004 to permit providers to enforce liens against insurers who paid amounts to patients without settling the lien. Midtown Medical Grp., Inc. v. Farmers Ins. Grp., 235 Ariz. 593, 595, ¶ 10, 334 P.3d 1252, 1254 (App.2014). That amendment does not affect the issue here, whether the enforcement of liens against a third-party settlement is a lien against the patient.

W2012–00044–SC–R11–CV, —— S.W.3d —— (Tenn. Dec. 19, 2014).

¶ 24 The Hospitals argue an accord and satisfaction of the liens bars any challenge to the validity of the liens themselves. Or, as the superior court concluded, enforceability of the "[a]ccord and satisfaction does not turn on whether Plaintiffs would have prevailed on the merits of the dispute that was settled." We disagree. As the above authorities show, if the underlying agreement is prohibited by a statute, any accord and satisfaction cannot be enforced.

¶ 25 The Hospitals contend that an accord and satisfaction must be enforced even if there is a meritorious good faith claim or defense to enforcing the underlying contract, relying on *Brecht v. Hammons*, 35 Ariz. 383, 278 P. 381 (1929), *disapproved on other grounds by Ariz. Pub. Serv. Co. v. S. Union Gas Co.*, 76 Ariz. 373, 382, 265 P.2d 435, 441–42 (1954), and *Shelton v. Grubbs*, 116 Ariz. 230, 568 P.2d 1128 (App.1977). The Hospitals' (and the superior court's) reliance on those cases is misplaced because the cases did not deal with underlying contracts which were expressly barred by statute but relied on the concept that a settlement of a claim is enforceable provided there is a good faith dispute about the enforceability of the underlying contract. Such a good faith dispute cannot exist when, as here, the Hospitals expressly agreed to accept only AHCCCS payments for the services rendered and to abide by federal law. Because federal law prohibits the liens, the Hospitals cannot successfully contend there was a good-faith dispute about the merits of the liens.

¶ 26 In *Brecht*, the supreme court considered the effect of the compromise of a void judgment. 35 Ariz. at 389, 278 P. at 383. The court stated that "the settlement of a bona fide dispute, or a doubtful claim, if made fairly and in good faith, is a sufficient consideration for a compromise based thereon. . . . the real consideration which each party receives is not so much the sacrifice of the right, as the settlement of the dispute." *Id.* The court noted that a settlement of a controversy is valid and binding, "not because it is the settlement of a valid claim, but because it is the settlement of a controver-

sy." *Id.* (internal quotation marks and citation omitted). "And when such settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine which is right. All that it needs to know is, that there was a controversy between the parties, each claiming in good faith rights in himself against the other and that such controversy has been settled." *Id.* (internal quotation marks and citation omitted). However, the court limited its holding by stating:

*Of course, the surrender of a claim which is known to be entirely without foundation either in law or at equity does not afford a sufficient consideration for a compromise . . . . [I]t is sufficient to support a compromise that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful, and that at the time of the compromise they in good faith so considered it. It is not essential that the question be in fact doubtful* in legal contemplation.

*Id.* at 390, 278 P. at 383 (emphases added). The court held that "notwithstanding that at a later time in another suit it was determined that no liability on the part of defendant as a matter of fact existed, he cannot now claim that the compromise which he entered into in good faith should be set aside." *Id.* at 391, 278 P. at 384.

¶ 27 We do not read *Brecht* as holding that when an underlying claim or contract is expressly prohibited by statute or regulation, an agreement to settle the claim is always enforceable. Rather, the court held when there is a good faith dispute resolved by an accord and satisfaction, courts will not examine the merits of the underlying dispute to enforce the accord and satisfaction. In contrast, if the underlying agreement is prohibited by statute or regulation, the courts will not permit a party to enforce the underlying prohibited agreement indirectly through an accord and satisfaction. *Supra* ¶¶ 19–20.

¶ 28 We see a fundamental difference between good faith disputes about the merits of an underlying agreement or lien and an agreement or lien which is affirmatively prohibited by statute. It is one thing for an

accord and satisfaction to bar any claim on the underlying agreement or any meritorious defense to the agreement when there is some doubt about the validity of the claim. It is entirely another to hold that an agreement or lien which is affirmatively prohibited by statute, can be enforced through an accord and satisfaction of the lien. Taken to its logical conclusion, if two corporations agreed to defraud a third party and split the ill-gotten gains, a disagreement over the division of the receipts resolved by an accord and satisfaction would be enforceable. If the underlying agreement or lien cannot be enforced directly, it cannot be enforced indirectly. *See Nat'l Union Indem. Co. v. Bruce Bros., Inc.*, 44 Ariz. 454, 466, 38 P.2d 648, 653 (1934) ("It is, of course, true that where a contact is not illegal on its face, and the facts which make it illegal do not appear in the pleadings or the evidence, the court will enforce the contract."). As *Public Health Trust of Dade County, Florida* made clear, if the underlying lien by a Medicaid provider was invalid, the provider cannot bring an action that its lien was impaired by a fraudulent accord of the lien. 693 So.2d at 565–66.

¶ 29 Equally important, even if there were a good faith dispute about the enforceability of the liens, the Hospitals cannot rely on such a theory because they expressly agreed in their Provider Participation Agreements that they would be bound by federal law, and they would "abide by Arizona Administrative Code R9–22–702 prohibiting the Provider from charging, collecting, or attempting to collect payment from an AHCCCS eligible person." Thus, the Hospitals effectively agreed that they would be bound by such a prohibition. Moreover, the Hospitals agreed that they would accept AHCCCS payments as payment in full for the services rendered. These Provider Participation Agreements trump any argument by the Hospitals that there was a good faith dispute about the legality of the liens such that an accord and satisfaction can be enforced.

■ ¶ 30 For similar reasons, we do not agree with the Hospitals that *Shelton* is controlling. In *Shelton*, the superior court granted summary judgment enforcing a settlement based on an underlying contract when one of the parties might not have been a licensed contractor. 116 Ariz. at 231, 568 P.2d at 1129. The appellants argued that the original claim was illegal or unenforceable because the defendant contractor did not plead it had a contractor's license so the settlement was void. *Id.* This Court affirmed based on *Brecht*, stating that since there was no allegation of fraud, misrepresentation or overreaching or an allegation of mistake, there was a bona fide dispute and the compromise was entered into good faith. *Id.* The Hospitals' reliance on *Shelton* is misplaced for two reasons. First, as we later made clear, a contract made by an unlicensed contractor in violation of Arizona statutes is not void, but only voidable, and the argument that the license precludes enforcement of the agreement is a waivable affirmative defense. *Smith v. Pinnamaneni*, 227 Ariz. 170, 173–74, ¶¶ 8–9, 254 P.3d 409, 412–13 (App.2011). In contrast, here if federal law prohibits these liens, the lien is void, not merely voidable. When the contract or lien is prohibited on its face or evidence shows that it is prohibited by law, it cannot be enforced directly, *see Nat'l Union Indem. Co.*, 44 Ariz. at 466, 38 P.2d at 653, and should not be enforceable indirectly through an accord and satisfaction agreement of the illegal lien, *supra* ¶¶ 19–20. Second, as discussed above, there is no good faith dispute about the enforceability of the lien when the Hospitals agreed to be bound by federal law and agreed to take AHCCCS funds as payment in full.

**B. Consideration**

■ ¶ 31 The Patients assert the accord and satisfaction agreements were not supported by consideration. They argue that the Hospitals cannot promise to refrain from doing something that they are legally barred from doing in the first place (placing a lien for balanced billing), nor give something to which the Patients have an absolute right (the third party settlement funds). The Hospitals contend that the accord and satisfaction agreements were supported by adequate consideration because the parties "exchange[d] promises to forbear from disputing a claim any further." We agree with the Patients.

¶ 32 The "[p]erformance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration...." Restatement § 73. However, there is adequate consideration "if the duty is doubtful or is the subject of honest dispute." *Id.* at cmt. b. Consistent with this view, the surrender of a claim or defense which later proves to be invalid is consideration only if "(a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law, or (b) the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid." Restatement § 74(1).

¶ 33 Here, the Hospitals expressly agreed to be bound by federal law when they provided services through AHCCCS and not to do any balanced billing. They also agreed to accept AHCCCS funds as payment in full for their services. Because the liens were in violation of federal law prohibiting balanced billing, the Hospitals' agreement to take a lesser amount as part of an accord and satisfaction of the liens does not constitute consideration. *See Hisel v. Upchurch,* 797 F.Supp. 1509, 1521 (D.Ariz.1992) (stating that giving a person something to which the person has an absolute right is not consideration); *Brewer v. Trust Co. Bank,* 205 Ga.App. 891, 424 S.E.2d 74, 76 (1992) (stating that a person's agreement to do what that person "is already legally bound to do is not a sufficient consideration for the promise of another" (internal quotation marks and citation omitted)). Moreover, as the Arizona Supreme Court stated in *Brecht,* "the surrender of a claim which is known to be entirely without foundation either in law or at equity does not afford a sufficient consideration for a compromise." 35 Ariz. at 390, 278 P. at 383. Given the Hospitals' agreement to be bound by federal law and to accept payment in full from AHCCCS, they have not shown that their liens had any foundation in law or equity nor supported by sufficient consideration for the accord and satisfaction.

### III. Attorneys' fees and costs on appeal

¶ 34 The Patients request costs and attorneys' fees on appeal pursuant to A.R.S. §§ 12–341 (2003), –341.01(A) (Supp.2013), and the private attorney general doctrine. The Hospitals argue that the request for attorneys' fees is premature because the Patients are not yet the successful parties and are merely individuals that never asked for class certification and are only seeking relief on behalf of themselves.

¶ 35 The Patients are entitled to their reasonable attorneys' fees on appeal for seeking to void the accord and satisfaction agreements under A.R.S. § 12–341.01(A) because this dispute arose out of contract. For purposes of that statute, a party who successfully claims the contract has been entered into but is invalid or unenforceable may be awarded reasonable attorneys' fees. *See Rudinsky v. Harris,* 231 Ariz. 95, 101, ¶ 27, 290 P.3d 1218, 1224 (App.2012) (holding that when plaintiff alleges a contract and the defendant successfully proves there was no contract, the action is considered to have arisen out of contract for purposes of A.R.S. § 12–341.01(A)); *ASH, Inc. v. Mesa Unified Sch. Dist. No. 4,* 138 Ariz. 190, 192, 673 P.2d 934, 936 (App.1983) (holding that petition to cancel an award of a contract to one party and award it to another arose out of contract for purposes of A.R.S. § 12–341.01(A)). Moreover, an award of fees at this point is not premature. By succeeding in challenging the enforceability of accord and satisfaction agreements and the liens, Patients have achieved "reversal of an unfavorable interim order ... central to the case ... [that] finally determines an issue of law sufficiently significant that the appeal may be considered as a separate unit." *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985) (supplemental opinion), *superseded by statute on other grounds as recognized by Chaboya v. Am. Nat'l Red Cross,* 72 F.Supp.2d 1081, 1092 (D.Ariz.1999). Such an award is consistent with the policy underlying section 12–341.01(B) to "mitigate the burden of the expense of litigation to establish a just claim or a just defense." *Rudinsky,* 231 Ariz. at 101, ¶ 26, 290 P.3d at 1224.

¶ 36 Weighing the factors whether to award fees, *Wagenseller,* 147 Ariz. at 394, 710 P.2d at 1049, we conclude that an award of fees is appropriate. Although this was a

question of first impression in Arizona the Patients' position was firmly supported by federal law and court decisions, and an award would not discourage other parties from defending legitimate contract issues for fear of an award of fees. Accordingly, we will award Patients their reasonable attorneys' fees in disputing the enforceability of the accord and satisfaction agreements and their taxable costs on appeal upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.[9]

## CONCLUSION

¶ 37 We reverse the judgment entered by the superior court and remand for further proceedings consistent with this decision.

---

**9.** Given our award of attorneys' fees based on A.R.S. § 12–341.01(A) and in the exercise of our discretion, we do not address whether Patients are entitled to an award of further fees under the private attorney general doctrine.