IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

JACKIE ABBOTT; ROBERT BERGANSKY; RAYMOND BROWN; NICHOLAS
BIGLER; RICHARD CAMPUZANO; DALTON GORMEY; TRACY JAMES;
STEPHANIE KRUEGER; ZAINAB MOHAMED; ROBERT PIERSON; LUCAS SMITH;
ROBERT VAN STEENBURGH; AMBER WINTERS; CHRISTINA YERKEY; AND
STEVEN YOUNG,
*Plaintiffs/Appellants.*

*v.*

BANNER HEALTH NETWORK FKA BANNER HEALTH, INC., AN ARIZONA
CORPORATION; DIGNITY HEALTH FKA CATHOLIC HEALTHCARE WEST, A
CALIFORNIA CORPORATION; SCOTTSDALE HEALTHCARE CORP., AN
ARIZONA CORPORATION; NORTHWEST HOSPITAL LLC, A DELAWARE
CORPORATION; NORTHERN ARIZONA HEALTHCARE CORP., AN ARIZONA
CORPORATION; JOHN C. LINCOLN HEALTH NETWORK, AN ARIZONA
CORPORATION; UNIVERSITY MEDICAL CENTER CORP., AN ARIZONA
CORPORATION; CARONDELET HEALTH NETWORK, AN ARIZONA
CORPORATION; TUCSON MEDICAL CENTER, AN ARIZONA CORPORATION;
ORO VALLEY HOSPITAL, LLC, A DELAWARE CORPORATION,
*Defendants/Appellees,*

No. CV-15-0013-PR
Filed May 23, 2016

Appeal from the Superior Court in Maricopa County
The Honorable J. Richard Gama, Judge
No. CV2012-007665
**AFFIRMED**

Opinion of the Court of Appeals, Division One
236 Ariz. 436, 341 P.3d 478 (App. 2014)
**REVERSED**

COUNSEL:

David L. Abney, Knapp & Roberts P.C., Scottsdale; Geoffrey M.
Trachtenberg (argued), Levenbaum Trachtenberg PLC, Phoenix; and B.
Lance Entrekin, The Entrekin Law Firm, Phoenix, Attorneys for Jackie
Abbott, Robert Bergansky, Raymond Brown, Nicholas Bigler, Richard
Campuzano, Dalton Gormey, Tracy James, Stephanie Krueger, Zainab

Mohamed, Robert Pierson, Lucas Smith, Robert Van Steenburgh, Amber Winters, Christina Yerkey, and Steven Young

Richard B. Burnham, Cameron C. Artigue (argued), Christopher L. Hering, Gammage & Burnham P.L.C., Phoenix, Attorneys for Banner Health Network, Banner Health Inc., Dignity Health, Catholic Healthcare West, Scottsdale Healthcare Corp., Northwest Hospital LLC, Northern Arizona Healthcare Corp, John C. Lincoln Health Network, University Medical Center Corp., Carondelet Health Network, Tucson Medical Center, and Oro Valley Hospital, LLC

Stanley G. Feldman, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson; Adam Studnicki, Studnicki Law Firm, P.C., Scottsdale, and Lincoln Combs, Gallagher & Kennedy, P.A., Phoenix, Attorneys for Amici Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

—————————

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, JUSTICE TIMMER, and JUSTICE BERCH (RETIRED) joined.

—————————

JUSTICE BRUTINEL, opinion of the Court:

¶1         Petitioners are health care providers ("Hospitals") who treated patients ("Patients") injured by third parties. The Hospitals were paid by the Patients' insurer, the Arizona Health Care Cost Containment System ("AHCCCS"), which had negotiated reduced rates with the Hospitals. The Hospitals then recorded liens against the Patients pursuant to A.R.S. § 33-931 and A.R.S. § 36-2903.01(G) for the difference between the amount typically charged for their treatment and the reduced amount paid by AHCCCS. In order to receive their personal injury settlements with the third parties, Patients settled with the Hospitals by paying negotiated amounts to release the liens.

¶2         We assume, without deciding, that—as Plaintiffs argue—Arizona's lien statutes are preempted by federal law. But, because there was a bona fide dispute about the enforceability of these liens when the Patients and Hospitals entered into settlement agreements to achieve lien releases ("accord and satisfaction agreements" or "agreements"), the agreements were supported by adequate consideration and addressed a

proper subject matter. Consequently, the accord and satisfaction agreements are valid.

## I. BACKGROUND

¶3 The Patients, along with other patients who did not settle with the Hospitals, sued to set aside the accord and satisfaction agreements and to recover the amounts paid to release the liens. The Hospitals moved to dismiss the complaint against the settling Patients pursuant to Arizona Rule of Civil Procedure 12(b)(6) for failing to state a claim because the parties had reached an accord and satisfaction. The Patients responded that the accord and satisfaction agreements were unenforceable because they lacked a proper subject matter and consideration. They argued that 42 U.S.C. § 1396a(a)(25)(C) preempted A.R.S. §§ 33-931 and 36-2903.01, which authorized the Hospitals' liens. Because the accord and satisfaction agreements were based on invalid liens, the Patients asserted, the agreements violated public policy, had an improper purpose, and lacked consideration. The Patients also claimed that Provider Participation Agreements between the Hospitals and AHCCCS required the Hospitals to "comply with all federal, State and local laws, regulations, standards, and executive orders governing performance of duties under this Agreement" and thus also prohibited the liens as "balance billing"—the practice of billing a patient for the difference between the providers' customary charges and what AHCCCS pays for services.

¶4 The trial court dismissed the Patients' complaint stating, "it is irrelevant whether federal law preempts Arizona law and prohibits hospitals from enforcing statutory liens on AHCCCS accounts . . . [because] [a]ccord and satisfaction does not turn on whether Plaintiffs would have prevailed on the merits of the dispute that was settled." The court concluded that the accord and satisfaction agreements were "final and binding regardless of the validity of the underlying claims."

¶5 The court of appeals reversed. *Abbott v. Banner Health Network*, 236 Ariz. 436, 448 ¶ 37, 341 P.3d 478, 490 (App. 2014). Reasoning that the accord and satisfaction agreements were void because federal law preempts the Arizona laws allowing the liens, *id.* at 438 ¶ 1, 341 P.3d at 480, the court held that there was not a "good faith dispute about the enforceability of the lien[s]," and therefore the accord and satisfaction agreements lacked both proper subject matter and consideration. *Id.* at 446–

47 ¶¶ 30–33, 341 P.3d at 478, 489 (stating that an agreement lacks proper subject matter if it is illegal or against public policy). The court concluded that "[i]f the underlying agreement is prohibited and unenforceable, an accord and satisfaction based on that agreement is also unenforceable." *Id.* at 443 ¶ 20, 341 P.3d at 485.

¶6        We granted review to determine whether the accord and satisfaction agreements between the Patients and the Hospitals are valid, which is an issue of statewide importance and likely to recur. We have jurisdiction under article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## II.    DISCUSSION

¶7        We review de novo an order granting a motion to dismiss for failure to state a claim. *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7, 284 P.3d 863, 866 (2012).

¶8        The Hospitals' liens are authorized by A.R.S. §§ 33-931(A) and 36-2903.01(G)(4). A.R.S. § 33-931 is the general medical lien statute. It provides hospitals an "entitle[ment] to a lien for the care and treatment or transportation of an injured person" that

> extends to all claims of liability or indemnity, except health insurance and underinsured and uninsured motorist coverage as defined in § 20-259.01, for damages accruing to the person to whom the services are rendered, or to that person's legal representative, on account of the injuries that gave rise to the claims and that required the services.

A.R.S. § 33-931(A). According to § 36-2903.01(G)(4), "A hospital may collect any unpaid portion of its bill from other third-party payors or in situations covered by title 33, chapter 7, article 3." These Arizona statutes allow a hospital that accepts payments from AHCCCS to file liens to collect any unpaid portion of its bill from third-party payors for its "customary charges." A.R.S. § 33-931(C).

¶9        On the other hand, federal Medicaid law explicitly prohibits balance billing. Specifically, 42 U.S.C. § 1396a(a)(25)(C) provides that when a person receives Medicaid assistance for which a third party is liable, the provider

may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan . . . .

And pursuant to 42 C.F.R. § 447.15:

A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.

Together, these federal laws prohibit a medical care provider from collecting from the individual receiving care the difference in the amount paid by Medicaid, or a state plan like AHCCCS, and the amount typically charged.

¶10            The court of appeals concluded that Arizona law conflicts with applicable federal law and is thus preempted under article VI, section 2, of the United States Constitution. But courts should not unnecessarily decide constitutional questions. *Petolicchio v. Santa Cruz Cty. Fair and Rodeo Ass'n, Inc.*, 177 Ariz. 256, 259, 866 P.2d 1342, 1345 (1994). Deciding whether the Arizona hospital lien statutes are preempted is unnecessary in determining whether the trial court properly considered and granted Petitioners' motion to dismiss.

¶11            Assuming, as noted above, that federal law preempts the Arizona lien statutes, we turn to the validity of the accord and satisfaction agreements. An "accord and satisfaction discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement, the accord being the agreement, and the satisfaction its execution or performance." *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 510 ¶ 24, 269 P.3d 678, 686 (App. 2011) (quoting *Vance v. Hammer*, 105 Ariz. 317, 319, 464 P.2d 340, 342 (1970)) (internal quotation marks omitted). The four elements of an accord and satisfaction are (1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds of the parties, and (4) consideration. *Vance*, 105 Ariz. at 320, 464 P.2d

at 343.  The Patients contend that the first and fourth elements are lacking here.

¶12        The settlement of a bona fide dispute provides consideration if it is made fairly and in good faith.  *Brecht v. Hammons*, 35 Ariz. 383, 389, 278 P. 381, 383 (1929), *disapproved on other grounds*, *Ariz. Pub. Serv. Co. v. S. Union Gas Co.*, 76 Ariz. 373, 382, 265 P.2d 435, 441 (1954).  As this Court stated in *Brecht*:

> The settlement of a controversy is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy.  And when such settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine what is right.  All that it needs to know is, that there was a controversy between the parties, each claiming in good faith rights in himself against the other and that such controversy has been settled.

*Id*.  On the other hand, "the surrender of a claim which is known to be entirely without foundation either in law or at equity does not afford a sufficient consideration for a compromise."  *Id*. at 390, 278 P. at 383.  If the matter in controversy was fairly considered by the parties to be unsettled at the time of the agreements, the settlement will not be unwound, even if the statutory provision creating the controversy is later determined to be invalid.  *Id*. at 390–91, 278 P. at 383 (citing *Bofinger v. Tuyes*, 120 U.S. 198 (1887)).  These principles align with the general proposition that settlements of disputed matters are favored by the law and will be upheld if fairly made.  *E.g.*, *Brecht*, 35 Ariz. at 390, 278 P. at 383; *Phillips v. Musgrave*, 23 Ariz. 591, 594–95, 206 P. 164, 165 (1922).

¶13        *Brecht* is instructive here.  At the time of the bank failure underlying that case, the Arizona Constitution imposed personal liability on stockholders of insolvent banks.  *Brecht*, 35 Ariz. at 385–86, 278 P. at 382. The state sued the bank's stockholders and obtained a judgment against them.  *Id.*  The stockholders then settled with the state to satisfy the judgment.  *Id.*  After the settlement was finalized, this Court determined that the provision imposing personal liability on stockholders was preempted by federal law.  *Hammons v. Watkins*, 33 Ariz. 76, 87, 262 P. 616, 620 (1927); *see Brecht*, 35 Ariz. at 386, 278 P. at 382.  In the stockholders' subsequent suit to unwind the settlement, we found that there was a good

faith controversy between the parties at the time of the settlement and held that the settlement was therefore binding. *Brecht*, 35 Ariz. at 391, 278 P. at 383–84.

¶14 The Patients argue that the Hospitals' liens asserted under Arizona law are illegal under federal Medicaid law, 42 C.F.R. § 447.15 and 42 U.S.C. § 1396a(a)(25)(C). Further, because they are illegal they cannot constitute a proper subject for an accord and satisfaction, and thus the agreements lack consideration. Under *Brecht*, however, the pertinent question is whether the legality of the liens (that is, whether federal Medicaid law preempts the Arizona laws authorizing the liens) was "settled" at the time of the agreement. The Hospitals argue that since 1984, A.R.S. § 36-2903.01(G)(4) has allowed hospitals to enforce provider-liens under A.R.S. § 33-931 after accepting payment from AHCCCS, and this statute is presumptively valid and constitutional.

¶15 Liens such as these have been authorized by Arizona statute for more than thirty years without an Arizona appellate court suggesting that enforcement of such liens is preempted by federal law. Indeed, our courts have found such liens valid and enforceable. *See Blankenbaker v. Jonovich*, 205 Ariz. 383, 388 ¶ 22, 71 P.3d 910, 915 (2003) (noting that "the lien statutes extend to health care providers . . . the ability to enforce a lien against those liable to the patient for damages in order to secure the providers' customary charges for care and treatment of an injured person"); *LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, 551 ¶ 31, 991 P.2d 246, 254 (App. 1998) (holding that liens against the tort recovery of AHCCCS patients are enforceable despite there being "no right to recover directly" from the patient).

¶16 In addition, the federal statute and regulation, 42 U.S.C. § 1396a(a)(25)(C) and 42 C.F.R. § 447.15, do not specifically address the collection of money owed to the patient by third-party tortfeasors. Several courts, however, have concluded that settlement proceeds belong to the patient and the federal prohibitions on balance billing apply. *See, e.g.*, *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr. Dated June 27, 2002*, 410 F.3d 304, 315 (6th Cir. 2005) (holding "the enforcement of [the medical provider's] lien on the proceeds of the malpractice settlement to recover the balance of its customary fee is prohibited by federal and state law" and "[h]aving chosen to accept payment from Medicaid . . . [the medical provider] abandoned all rights to

further recovery of its customary fee from the lien"); *Evanston Hosp. v. Hauck*, 1 F.3d 540, 543–44 (7th Cir. 1993) (holding a hospital was not permitted to return a Medicaid payment and sue the patient for its customary fee, and finding that allowing the hospital to recover the additional sum would make Medicaid "an insurance program for hospitals rather than for indigent patients"). The United States District Court for the District of Arizona has reached the same conclusion. *Lizer v. Eagle Air Med. Corp.*, 308 F. Supp. 2d 1006, 1009 (D. Ariz. 2004) ("Congress passed the balance billing prohibition in order to protect eligible patients from having to pay additional sums for services already compensated by Medicaid. The accompanying regulation was passed in order to ensure that this purpose was carried out by preventing providers from intercepting funds on the way to a patient.").

**¶17** But these cases are not binding on Arizona state courts, and at the time of the accord and satisfaction agreements here, no Arizona appellate court had addressed the enforceability of Arizona's medical lien statutes against third-party settlements obtained by Medicaid patients. Thus, while federal law may preempt state law in situations like these,[1] the issue was not settled in Arizona when these agreements were entered into. The stated public policy in Arizona, as reflected by our statutes, was that such liens were valid.

**¶18** An accord and satisfaction has proper subject matter unless it is founded on a contract that violates statutes or is contrary to public policy. *See 1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202 ¶ 7, 196 P.3d 222, 224 (2008) ("Contract provisions are unenforceable if they violate legislation or other identifiable public policy."). Here, Arizona law specifically authorized the liens that were settled. Because the statutory policy of Arizona is to allow such liens, they are a proper subject matter for the accord and satisfaction until such time as the Arizona laws authorizing the liens are clearly determined to be preempted by federal law. Thus, the accord and satisfaction agreements had a proper subject matter. Likewise,

---

[1] While this case was pending in the court of appeals, the superior court granted summary judgment in favor of other plaintiffs—patients against whom hospital liens were asserted but who had not entered into accord and satisfaction agreements with hospitals—determining that the state statutes are preempted by federal law.

the settlement of the bona fide dispute served as consideration to support the accord and satisfaction.

**¶19** The Patients also suggest that A.R.S. §§ 36-2903.01(G)(4) and 33-931(A) are preempted because the Provider Participation Agreements required the Hospitals to follow federal law. This argument begs the question. If it was not settled that such liens were preempted as prohibited balance billing under federal law, it was no more settled in an agreement incorporating that same federal law. The terms of the Provider Participation Agreement do not change the fact that the accord and satisfaction agreements resolved bona fide disputes.

### III.    CONCLUSION

**¶20** Based on the bona fide dispute about the enforceability of the liens when the Patients and Hospitals entered into the accord and satisfaction agreements, these agreements were supported by adequate consideration and had a proper subject matter. Consequently, the agreements are valid, and the trial court appropriately granted Hospitals' motion to dismiss. We reverse the court of appeals' opinion and affirm the trial court's dismissal of the complaint and entry of judgment in favor of the Hospitals.